## REID v. FARGO, AS PRESIDENT OF THE AMERI-CAN EXPRESS COMPANY.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 279. Argued March 13, 1916.—Decided June 12, 1916.

In the Second Circuit, the practice is well established that an appeal from the decree of the District Court to the Circuit Court of Appeals in an admiralty case by one of the parties opens the case for a trial de novo. *Irvine* v. *The Hesper*, 122 U. S. 256.

The owner of an automobile delivered it to an express company in London to forward to New York, declaring its value to be far in excess of $100; the express company boxed it and delivered it to a carrier and accepted a bill of lading with a limitation of $100 liability; on arrival at destination a stevedore discharged the cargo and the rope by which the automobile was being hoisted broke and the automobile was seriously damaged: in a suit *in personam* in admiralty against the express company and to which the carrier and the stevedore had been made parties held *that:*

The breaking of the rope in this case illustrates, as by analogy, the rule of *res ipsa loquitur* and throws the responsibility on the stevedore furnishing the rope and handling the article, unless such breaking can be explained as resulting from a hidden defect, which in this case is without support in the evidence.

The breaking of the rope appearing from the evidence to have probably resulted from straining and cutting, the stevedore was responsible for the damage and the decree should be against him primarily.

In case of failure to collect from the stevedore the carrier is responsible to the extent of the limited amount stated in the bill of lading, and in case there is still a deficiency, the express company, even though only a forwarder, is liable by reason of having, without the authority of the shipper and with knowledge of the value of the article entrusted to it, accepted from the carrier a bill of lading limiting its liability.

THE facts, which involve the jurisdiction and power of the Circuit Court of Appeals on appeal from the Dis-

trict Court in Admiralty and the liability of forwarders, carriers and stevedores in connection with the shipment and delivery of an automobile, are stated in the opinion.

*Mr. Oscar R. Houston,* with whom *Mr. Howard S. Harrington* was on the brief, for petitioner.

·*Mr. Walter F. Taylor* for Fargo, President.

*Mr. Roscoe H. Hupper,* with whom *Mr. Norman B. Beecher* was on the brief, for International Marine Co.

*Mr. Livingston Platt,* with whom *Mr. Frank H. Platt* was on the brief, for T. Hogan & Sons.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

This controversy thus arose: In December, 1910, Reid, the petitioner, delivered in London to the American Express Company an automobile to be carried to New York. The Express Company, in a communication concerning the shipment, was informed that the car was worth about $3,900. The car was boxed by the Express Company and by it delivered to the Minnewaska, a steamship belonging to the International Mercantile Marine Company, bound for New York. The Express Company shipped the car in its own name as consignor to itself in New York as consignee and no express notice was given to the ship of the real value of the package and its contents. The bill of lading issued by the Steamship Company expressly limited the liability to $100 and contained the following clause: "It is also mutually agreed that the value of each package shipped hereunder does not exceed $100, or its equivalent in English currency on which basis the freight is adjusted, and the Carrier's liability shall in no case exceed that sum, unless a value

in excess thereof be specially declared, and stated herein, and extra freight as may be agreed on paid." On the arrival of the ship at New York, T. Hogan & Sons, Incorporated, stevedores, were employed to discharge the cargo. A sling was placed around the box containing the car and a fall with a hook attached to it was affixed to the sling and by a winch the car was lifted up from the hold through the hatchway. When it had passed above the hatchway a hook attached to another tackle was fastened to the sling, this second tackle being used to swing the package toward and over the side of the ship to land it on the pier. This was not accomplished, however, because as the package swung over the side of the ship toward the pier the sling broke and the car fell into the water and was seriously damaged.

In November, 1911, Reid filed his libel in the District Court of the United States for the Southern District of New York against the Express Company to recover from it the amount of damage caused to the automobile. Before answering the Express Company, in conformity to Admiralty Rule '59 of this court (210 U. S. 565) and with Rule 15 in Admiralty for the Southern District of New York,[1] filed two petitions, one against the Steamship Company and the other against Hogan & Sons, to make them parties defendant on the ground that if there was any liability on the part of the Express Company

---

[1] Rule 15 in admiralty of the United States District Court for the Southern District of New York is as follows:

If a defendant shall, by petition on oath, filed before answer, or within such further time as the court may allow, allege fault in any other party, in respect of the matters complained of in the libel, or shall allege that he is entitled to contribution or indemnity from any other party in respect of such matters, and shall pray that such other party be brought into the suit as a party defendant in analogy with the provisions of Admiralty Rule 59 of the Supreme Court, process on such petition may be issued and the cause shall proceed otherwise as in cases under the 59th Rule.

on the libel of Reid, both the Steamship Company and Hogan & Sons were responsible therefor, and asking a decree over against each of them separately in case there was any decree against the Express Company. Thereupon the Express Company answered the original libel denying responsibility on the ground among others that it was a mere forwarder. Subsequently both Hogan & Sons and the Steamship Company answered not only the petitions of the Express Company making them parties defendant but also the original libel, traversing the alleged liability on various grounds. The latter company, however, referring to the limitation of liability to $100 in the bill of lading which it had issued, admitted its responsibility to that extent and alleged that the sum thereof had been offered and declined.

In March, 1913, an interlocutory decree was entered holding that Hogan & Sons were primarily responsible and that the Express Company was secondarily so, and that when the amount of the loss was ascertained Reid would therefore have the right to recover the amount from Hogan & Sons, and in addition to recover from the Express Company any part of the sum which he was unable to collect under execution from Hogan & Sons. The final decree which thereafter fixed the amount at $2,724.40 carried out the interlocutory decree. Nobody appealed from the interlocutory decree and the Express Company did not appeal from the final decree fixing its secondary liability. Hogan & Sons, however, did appeal. The court below, considering that on the appeal the case was before it for a trial *de novo* and therefore that the rights and liabilities of all the parties must be considered from that point of view, reversed the decree below and held that error had been committed in the decree rendered against Hogan & Sons, because the proof did not establish that they had been negligent. As to the Express Company it was also held that error had been

committed in decreeing it to be liable secondarily because
in receiving the automobile it had acted in the capacity
of a mere forwarder and had discharged its obligations
in that respect. As to the decree which dismissed the
Steamship Company, it was held that error had been com-
mitted because that company as an insurer was liable,
not however exceeding the amount of $100, the limitation
stated in the bill of lading. As the result of the allowance
of a petition for certiorari the correctness of these con-
clusions is now before us for decision.

At the threshold it is insisted that the court below had
no authority to consider the case as before it for a new
trial, that is, *de novo*, and to award relief upon that theory,
and that consequently it erred in reviewing the interloc-
utory decree which was not appealed from by which the
Steamship Company was dismissed and allowing a re-
covery against that company, and also in reviewing both
the interlocutory and final decrees so far as it was essential
to grant relief to the Express Company because that com-
pany had not appealed. It is not denied that in the
Second Circuit the right to a *de novo* trial was considered
as settled by *Munson S. S. Line* v. *Miramar S. S. Co.,
Limited*, 167 Fed. Rep. 960, and that a well-established
practice to that effect obtained, but it is insisted that a
general review of the adjudged cases on the subject will
show the want of foundation for the rule and practice.
But we think this contention is plainly without merit
and that the right to a *de novo* trial in the court below
authoritatively resulted from the ruling in *Irvine* v. *The
Hesper*, 122 U. S. 256,—a conclusion which is plainly
demonstrated by the opinion in that case and the authori-
ties there cited and the long continued practice which has
obtained since that case was decided and the full and con-
vincing review of the authorities on the subject contained
in the opinion in the *Miramar Case.* Entertaining this
view, we do not stop to consider the various arguments

which are here pressed upon our attention tending at least indirectly to establish the non-existence of the right to the trial *de novo* in the court below or that this case for reasons which are wholly unsubstantial may be distinguished and made an exception to the general rule, because to do so would serve no useful purpose and would be at least impliedly to admit that there was room to discuss a question concerning which there was no room for discussion whatever.

It is conceded that if the grounds relied upon to fix liability as against the Express Company, the Steamship Company and Hogan & Sons are established, there is a right to an independent recovery as to each, whatever may be the recourse of these parties to recover over as against each other. Which of the defendants, if any, was liable primarily for the loss, is then to be considered. We first approach this question from the point of view of Hogan & Sons, because undoubtedly that company was in possession and control of the car at the time it dropped into the river and was damaged. While there is some confusion and various slight contradictions in the testimony, we are of the opinion that the trial court was right in holding that the loss occurred through the fault of Hogan & Sons, and therefore that the court below erred in reversing the decree against that company. And without undertaking to review the testimony, to all of which we have given a careful consideration, we content ourselves with briefly pointing out the general points of view which have led us to the conclusion stated. Without saying that the mere fact of the dropping of the automobile into the water in the course of delivery from the ship's hold to the pier serves to speak for itself on the issue of responsibility, that is, to bring the case within the principle of *res ipsa loquitur*, we are of the opinion that by analogy the case well illustrates that rule for this reason: Some cause must be found for the dropping of the car into the river, and only

two theories on this subject may be deduced from the proof, either that the accident to the car occurred without fault as the result of the breaking of the rope composing the sling because of some unseen and hidden defect in such rope, or that it was occasioned by some act of negligence or want of care in handling the car. The first, we are of opinion, is without any substantial support in the proof; in fact, to accept it would conflict with direct and positive proof to the contrary. That view, therefore, could only be sustained by substituting imagination for proof. The second, on the contrary, we are of opinion, finds cogent support from the proof which could only be escaped by overthrowing it by the process of imagination to which we have just referred. It is unquestioned that when the sling was put around the box containing the car preparatory to attaching the hook in order to hoist it, no blocks or other means were used to prevent the rope from being worn or cut by the edges of the box. The presumption that the rope was strong and efficient, arising from the fact that it held the weight of the box until it was lifted above the hatch and until by the swinging motion the danger of straining or cutting of the ropes upon the edges was more likely to result, gives adequate ground for the inference that such cutting and straining occurred and led to the severance of the rope and the precipitation of the car into the water. And this inference is supported by various other circumstances which we do not stop to recapitulate.

Were the Steamship Company and the Express Company in the order stated liable to Reid, the libellant, dependent upon his inability to make under execution the amount of the decree from Hogan & Sons, is then the only remaining question. In substance this question, however, is negligible since in the argument at bar it was conceded that T. Hogan & Sons, Incorporated, were amply solvent and that there was no question of their ability

to respond to any decree which might be rendered against them. To avoid, however, all miscarriage of right from any possible, though improbable, change of conditions, without going into detail or stating the considerations which control our conclusion on the subject, we content ourselves with saying, first, that as to the Steamship Company we are of the opinion that on the failure to make the amount of the decree against Hogan & Sons, the libellant will be entitled to recover over against that company to the amount of $100, to which its liability was limited as stated in the bill of lading under which the shipment was made; second, that even looking upon the Express Company as a forwarder, under the circumstances of the case and the terms of the bill of lading under which the car was shipped by that company, the trial court rightly held it liable and that recovery against it on failure to enforce the decree against Hogan & Sons will also obtain.

It follows that the decree below must be reversed and the cause remanded to the trial court with directions to set aside its decree in so far as it dismissed the Steamship Company from the case and to enter a decree in conformity with this opinion.

*Reversed and remanded.*