## DROWNE v. GREAT LAKES TRANSIT CORPORATION.

(Circuit Court of Appeals, Second Circuit. February 2, 1925.)

No. 175.

1. **Shipping** ⟨key⟩84(3)—**Owner held bound to provide suitable guard for manhole.**

Owner of vessel undergoing repairs *held* required to provide suitable guard for open manhole and liable for death of workman falling into unguarded manhole.

2. **Shipping** ⟨key⟩84(5)—**Employee of contractor not chargeable with contributory fault in using only available hooks to remove hatch covers.**

Employee of construction company engaged in repair of vessel is not chargeable with contributory fault in using only hooks available for removing hatch covers.

3. **Shipping** ⟨key⟩84(3)—**Negligence in failing to provide guard for manhole held proximate cause of death of construction company employee.**

Failure of owner of ship undergoing repairs to provide guard for open manhole *held* proximate cause of death of employee of construction company.

4. **Admiralty** ⟨key⟩117—**Suits in admiralty are triable de novo.**

A suit in admiralty is triable de novo on appeal, and appellate court is not concluded by trial court's award for wrongful death.

5. **Death** ⟨key⟩98—**$13,500 damages held insufficient and increased to $15,000.**

Award of $13,500 to widow for wrongful death of workman, 40 years of age, with life expectancy of 25 years and earning capacity of $1,800 per year, who contributed from $35 to $50 per week to his wife, *held* insufficient and increased to $15,000.

Appeal from the District Court of the United States for the Western District of New York.

Libel by Martha Drowne, as administratrix of the estate of George Drowne, deceased, against the Great Lakes Transit Corporation, to recover damages for the loss of life of George Drowne. Decree for libelant (1 F.[2d] 339), and respondent appeals. Modified, with directions.

Brown, Ely & Richards, of Buffalo, N. Y. (Fred W. Ely, of Buffalo, N. Y., of counsel), for appellant.

Sullivan, Bagley & Wechter, of Buffalo, N. Y. (Joseph A. Wechter, of Buffalo, N. Y., of counsel), for appellee.

Before ROGERS, MANTON and HAND, Circuit Judges.

MANTON, Circuit Judge. The appellant, owner of the Munsey, was engaged in over-

hauling and putting her in condition for navigation for the season of 1923 while she lay moored in her winter quarters in the port of Buffalo on February 21, 1923. There were about 40 workmen, consisting of carpenters, electricians, and pipe fitters, engaged in making these repairs. They were in various parts of the vessel in charge of several foremen. The appellant's shipkeeper was on board. In addition to the work being done by such employees of the owner, there were employees of the Buffalo Marine Construction Company, of whom the deceased was one, who were repairing plates on the starboard side of the hull in holds Nos. 1 and 2. This work was being carried on pursuant to a contract between it and the owner. The hull was divided into five holds. Access to No. 1 hold was through a manhole aft of No. 1 hatch. A fixed iron ladder leads to the bottom. The manhole is about 30 inches in diameter and covered with a steel cover which, when in place, was flush with the deck. The iron ladder is permanent and the manhole and ladder furnish a means of ingress and exit to and from the hold. It is located 6 or 7 feet aft No. 1 hatch and a little to the port of amidships. This between-decks is a large room, and each of the five holds has two hatches. No. 1 is in the forward end of the vessel, about 17 or 18 feet across and about 7 or 8 feet fore and aft and was covered with planks in sections. The planks were 10 to 12 inches wide and about 7½ feet long. There were about eighteen to each hatch. Each plank was handled with hatch hooks which were hooked into gauges through which a bolt passed in each end of the plank. It required two men to remove the planks on each hatch and in so doing to use a hatch hook. In 1914, the owners were directed by the federal steamboat inspector to provide movable guards made of pipe with which to guard the manholes when the cover was removed. The guard, as made, consisted of four upright legs about 3 feet high, around which two other pipes were fastened horizontally so that when in use it would be a safeguard against falling into the manhole. Such guards were used upon the Munsey when in service, but they were not there on the occasion herein referred to.

The deceased was a member of a riveting gang and operated a riveting machine. The rivets were heated in the forge and were passed from the forge to the place of use. This gang had been engaged in work on the vessel for about three days. On the morning of February 21, 1923, the covers were taken off the manhole near hatch No. 1 so that the rigger gang could get into the No. 1 hold for the purpose of rigging up a staging for the riveters. The riveting gang was working at that time in No. 2 hold, and No. 1 was closed. When they finished with No. 2 hold, they shifted their tools to No. 1 hold by taking the tools up onto the between-decks and letting them down into No. 1 hold through the manhole aft No. 1 hatch. The forge for heating the rivets was already in No. 1 hold. The deceased was one of the men who assisted in doing this work. There was no guard around the manhole, and although the shipkeeper was asked for a guard, none was furnished, and a search of the vessel for such guard produced none, and it was admitted at the trial that there was no manhole guard aboard the vessel at the time of the accident. It became necessary to remove the covers of No. 1 hatch to let in air and let out the smoke and gas for the forging machine below. The foreman directed that some of the covers of No. 1 hatch be removed. The deceased was engaged in removing these covers with another workman, both of whom used the only two hatch hooks available. These were found on the vessel. They succeeded in removing one plank, and as they were lifting the second plank, it slipped from the hooks and fell into the hold. They tried unsuccessfully to lift the third one, and then a fourth, and when they lifted this three or four inches, the hook of the deceased's fellow workman slipped off the plank, and as the plank dropped, it slipped from the hook held by the deceased, and the sudden releasing of the entire weight of the plank caused the deceased to take involuntary steps backward in an effort to recover his equilibrium, and before he succeeded he fell into the open and unguarded manhole, doubled up, and went through and met his death. The hook which his fellow workman had used was taken, and both were produced at the trial by the appellee. They were sufficiently identified to justify the learned trial judge to accept the claim that they were the hooks used at the time of the accident. It was not proven that there were other hooks available, nor is it established that there was any negligence on the part of the deceased or his fellow workman in the choice of the hooks.

[1-3] The vessel was obligated to provide reasonably safe equipment for the deceased, and we think it was a breach of that duty to him to fail to keep this manhole reasonably safe for him and his fellow employees, although they were working for a construction

company, by placing a guard about it. The Spokane (C. C. A.) 294 F. 242, certiorari denied, The Spokane v. Steiner, 264 U. S. 583, 44 S. Ct. 332, 68 L. Ed. 861; The Omsk (C. C. A.) 266 F. 200. Movable guards for the purpose of guarding open manholes were recognized as a necessary safeguard, for the vessel used them after it was ordered so to do by the federal inspector. The deceased's fellow workman asked for such a guard to use it as a protection, and this was denied him because there were none on board. With the large number of mechanics at work on the vessel, reasonable care should have dictated to the vessel owner the need of keeping open the manholes in going to and from the decks, and this one in particular, while the riveting gang was working there. It was the duty of the vessel to furnish proper guards under such circumstances. Because there is testimony that the hooks used were the only available ones, no contributory fault can be chargeable to the deceased in using them on the occasion in question. When either through the fault of the hook or otherwise, the deceased lost his balance and involuntarily stepped back in the direction of and into the manhole, he would have been uninjured except for the negligence in failing to properly guard the manhole. There was no reason to suspect danger in the work the deceased undertook to do, and it was the natural and the probable consequence of the negligence or wrongful act of maintaining an unguarded manhole that ought to have been foreseen in the light of the attending circumstances that was the proximate cause of the loss of this life. Salsedo v. Palmer (C. C. A.) 278 F. 92, 23 A. L. R. 1262; Wilmington Star Company v. Fulton, 205 U. S. 60, 27 S. Ct. 412, 51 L. Ed. 708; D. L. & W. Co. v. Petrowsky, 250 F. 564, 162 C. C. A. 570; Milwaukee & St. Paul Ry. Co. v. Kellogg, 94 U. S. 475, 24 L. Ed. 256; Fitzwater v. Warren, 206 N. Y. 355, 99 N. E. 1042, 42 L. R. A. (N. S.) 1229; Rooney v. Brogan Constr. Co., 194 N. Y. 32, 86 N. E. 814.

[4, 5] The deceased, 40 years of age, was earning $1,800 a year and at the time of his death had an expectancy, according to the American Tables of Mortality, of 25 years. He left a widow. The learned District Judge awarded $13,500 as compensatory damages. While the steamship company takes this appeal, it is a trial de novo in this court. The John Twohy, 255 U. S. 77, 41 S. Ct. 251, 65 L. Ed. 511; Reid v. Fargo, 241 U. S. 544, 36 S. Ct. 712, 60 L. Ed. 1156; The Kalfarli (C. C. A.) 277 F. 391. We are not concluded as to the amount awarded by the District Judge, since the whole case is open here, and we are not unmindful of the cases which assert that the decision of the trial court in admiralty upon the questions of fact, based upon conflicting testimony or the credibility of witnesses examined before the judge, is entitled to great respect and will not be lightly reversed or modified unless there is a decided preponderance of evidence against it or a mistake is clearly shown. The Ludvig Holberg, 157 U. S. 60, 15 S. Ct. 477, 39 L. Ed. 620. But this appellate court is not concluded by the amount awarded, even though the witnesses were seen and heard by the District Judge. The Spokane, supra; Pentz v. The Ariadne, 13 Wall. 475, 20 L. Ed. 542; The Kalfarli, supra. These are many elements that enter into the assessment of damages for the wrong resulting in loss of life. The deceased's age, his earning capacity, his dependents and their ages, his condition of health, his prospect of advancement in position and employment, are all elements to be considered. His contribution to his family is an important factor. The deceased was married for 15 years and was in very good health. He was in no way disabled from carrying on his occupation. He worked steadily and contributed from $35 to $50 a week to his wife. If he lived the full expectancy of life, he had an earning capacity of $45,000, and according to his custom, his wife would have received for her living, comfort, and their mutual savings, nearly all of it. Of course, his life might not have been spared during this full life's expectancy, He might have become sick or infirm. But with good health and a useful life in prospect, we think the award below was insufficient. We must take note of juries' award of compensation as some guide to control us in the decision of this question of fact. We note that with the increase in the cost of living, awards have been larger. The widow who must live without the aid of her husband is necessarily confronted with the increase in the cost of living and of her clothing. In the administration of justice, it is the purpose of the law to compensate the dependents as fully as money can for the loss sustained. Its demands, we think, require us to increase the award here and to allow the administratrix $15,000, the full amount prayed for in the libel.

The decree is modified, with directions to the District Court to enter a decree in conformity with this opinion. Decree modified, with costs.