## THE TOWNSEND.

## THE MEADE.

Circuit Court of Appeals, Second Circuit.
December 3, 1928.

No. 49.

Duncan & Mount, of New York City (Russell T. Mount and Frank A. Bull, both of New York City, of counsel), for appellant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Robert S. Erskine and Henry P. Elliott, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). ■ The claimant of the tugs took no appeal from the interlocutory decree in favor of the libelant; it seeks now, on the theory that this is a trial de novo, to raise the question of liability. Naturally no appeal was taken by the claimant from the final decree dismissing the libel, and no error has been assigned by the appellee to any part of the record. The libelant's appeal, however, brings up the whole case for a trial de novo; consequently this court may determine every issue raised by the pleadings, and, without regard to the interlocutory decree below, may direct such decree to be entered as is consistent with law. Irvine v. The Hesper, 122 U. S. 256, 266, 7 S. Ct. 1177, 30 L. Ed. 1175; Reid v. Fargo, 241 U. S. 544, 36 S. Ct. 712, 60 L. Ed. 1156; Standard Oil Co. v. So. Pac. Co., 268 U. S. 146, 155, 45 S. Ct. 465, 69 L. Ed. 890; Munson S. S. Line v. Miramar S. S. Co., 167 F. 960 (C. C. A. 2). The question of the tug's liability is therefore before us.

What caused the barge to leak is not known; concededly no evidence was offered to connect it with faulty navigation by the tugs. Nor were they negligent in taking her out of the tow at a time when she was obviously sinking. They beached her at the best available place. The lower court held them responsible solely because they failed to anchor or otherwise make fast the barge after they had run her upon the mud flats. This holding presupposes that the duty to anchor, if an anchor is necessary to safe mooring, rests upon the tug rather than upon the bargee. This is by no means clear under the authorities. In The M. E. Luckenbach (D. C.) 200 F. 630, affirmed 214 F. 571 (C. C. A. 2), a barge in tow was cast adrift to avoid collision with a schooner. It was held to be the bargee's duty to anchor, and that, if his failure to do so caused the barge to strand, the tug was not responsible, even though it had been negligent in bringing about the danger which necessitated casting its tow adrift. In that case, it is true, the tug signaled to the bargee to drop anchor, while here the Townsend's captain gave no instructions to the bargee. In The Panther, 5 F.(2d) 64 (C. C. A. 2), a barge was cast adrift while the tug was landing another boat in its tow. The drifting barge came into a collision, which might have been avoided, had the barge had an anchor and dropped it. The tug was exonerated from liability.

■ Ordinarily, after the tug has brought its tow to a safe berth it is the duty of the bargee to see that his mooring is proper, though, if this requires more nautical skill than a boatman can be expected to have, the tug may be held at fault for not seeing that a better fast was made. The Ganoga, 257 F. 720 (C. C. A. 2). By analogy, it would seem that ordinarily it is the bargee's duty to see that his barge does not move from the place she was beached, and to drop an anchor if that be necessary. If the anchor was too heavy for him to handle alone, it was a fault of the owner for insufficient manning. Moreover, the tug doubtless would have helped, had the bargee suggested that help was needed. This he did not do, but relied entirely upon the tug to determine what was necessary. However, we are not required on the present record to decide upon whom is the duty to anchor a beached tow, when due care requires the dropping of an anchor, because, for reasons now to be stated, we think no one was negligent in failing to anchor barge No. 113.

■ This barge was built entirely of reinforced concrete. She had a length of 150 feet, a beam of 21 feet, and was 12 feet deep, and, when filled with water, she certainly would not float. The bargee first discovered that she was leaking by being rolled from his

bunk, while asleep, into water on the cabin floor. She had developed a decided list, so that, according to one witness, the starboard side had about 18 inches of freeboard while the port side had 4 or 5 feet. As she had no cargo, this meant that she had already taken in much water. Indeed, the captain of the brick scow on her starboard side was so convinced that she would promptly sink that he threatened to cut the lines if she were not gotten out of the tow immediately. The captain of the Townsend, when he pulled her out of the tow, thought that she was half full of water and might sink before he could reach the beach. She was run onto the mud flats until she was hard aground, and was left there in the belief that she would never float again, a belief shared by her bargee, as well as by the captain of the tug, and they were the only witnesses called who saw her on the ground. To us this seems a reasonable expectation. That she did float was apparently due to the fact that her hatches were tight enough to create an air chamber, which for a time held back the water. To hold that the tug should be charged with the duty of foreseeing such a contingency as that imposes, in our opinion, too severe a standard. Under the peculiar circumstances of this case, we think the District Court erred in finding negligence on the part of the tug in failing to cast an anchor, whatever may be the rule in dealing with a barge of ordinary construction.

Since, in our opinion, no liability was proved, the final decree dismissing the libel was correct, and it is unnecessary to consider the questions relating to damages, toward which most of the argument was directed.

The decree is affirmed.