### GARTLAND S. S. CO. v. UTAH–IDAHO SUGAR CO. et al.

### No. 6128.

Circuit Court of Appeals, Seventh Circuit.

Nov. 30, 1937.

Robert Branand, Jr., and Edward B. Hayes, both of Chicago, Ill., for appellant.

Arthur E. Otten, of Buffalo, N. Y., and L. F. Binkley, of Chicago, Ill., for appellee Utah-Idaho Sugar Co.

Hubert O. Wolfe and Francis J. Hart, both of Milwaukee, Wis., for appellee National Terminals Corporation.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This action in libel sought recovery for damage to, and shortage of, a cargo of sugar, carried in the steamer "Back Bay" from Milwaukee to Buffalo. The libelant, Utah-Idaho Sugar Company, was the owner of the cargo. The action was in rem against the steamer and in personam against D. Sullivan & Company, which was the agent of the owner. The Gartland Steamship Company filed claim to the steamer as its owner, answered the libel, and impleaded National Terminals Corporation by petition under Admiralty Rule 56. With its answer and petition it filed a proper stipulation with sufficient surety in full compliance with that rule. Sullivan & Company answered, and the impleaded respondent answered both the petition and libel, and libelant answered the petition.

At the conclusion of the hearing upon the liability of the parties the court made special findings of fact, stated its conclusions of law, and entered its interlocutory decree.

Among other matters, not here material, the court found substantially the following

facts: On November 22, 1933, libelant entered into an agreement with respondents and claimant wherein respondents and claimant agreed to transport on the steamer "Back Bay," from Milwaukee to Buffalo, and there deliver in the same condition as when received, a quantity of sugar at the rate of fourteen cents a hundred pounds; that said cargo should be insured in the name and for the benefit of libelant and that the premiums therefor should be paid out of the agreed rate.

There was no agreement that the cargo would be insured for the benefit of respondents or claimant, and there was no "shipper's load and count" agreement entered into. The insurance was obtained, naming libelant as the beneficiary, and each policy provided that it would be void in the event of any agreement by the assured giving any carrier the benefit thereto.

Respondents and claimant employed the impleaded respondent to stevedore the cargo at Milwaukee for sixty cents a ton, and likewise employed the Buffalo Freight Terminal and Warehouse Company to stevedore the cargo at Buffalo.

Pursuant to the agreement libelant delivered to respondents and claimant at Milwaukee on November 28, 1933, 4,412,625 pounds of sugar, packed variously in white sacks, burlap bags, and bales, all in good condition, for transportation and delivery at Buffalo.

The impleaded respondent stevedored the cargo at Milwaukee, and loaded it into the steamer "Back Bay," for which it was paid by the claimant. The work was done under the direction and control of the officers of the steamer, and in its performance the impleaded respondent at all times exercised due care.

The lading of the vessel was completed after midnight on November 30, 1933. Detailed bills of lading were not then ready, and to expedite the movement of the vessel respondents and claimant issued a bill of lading for approximately 4,624,750 pounds, consisting of approximately 44,000 bags and bales, and directed impleaded respondent to issue and deliver to libelant detailed ladings showing the exact amount received. These directions were complied with, and thereafter respondents and claimant issued their invoice for freight for the transportation in the amount of $6,177.68, being for 4,412,625 pounds at $2.80 per ton. This amount was paid by libelant, and out of it was paid the insurance premiums.

The steamer arrived at Buffalo on December 3, and in due course the cargo was discharged and delivered, but a large part of it was in a damaged condition, the sacks being dirty, stained and torn, and the sugar caked. A part of the cargo was not delivered at all. The amount of damage sustained by libelant was advanced to it by the insurers as a loan, repayable out of any recoveries.

Upon these findings the court concluded: (1) That the insurance policies did not insure, or inure to the benefit of appellant or its libelled boat; (2) that in stevedoring the cargo at Milwaukee the appellee, National Terminals Corporation, was the employee of appellant; (3) that in issuing and delivering to appellee, the libelant, the detailed bills of lading, appellee, the stevedore, was appellant's agent; (4) that the respondent steamer "Back Bay" and appellant were responsible and liable to libelant for the loss and damage sustained by libelant with respect to the cargo; (5) that appellee, the stevedore, was not responsible or liable to appellant for the damage.

The decree, entered on April 17, 1936, awarded recovery from the steamer, her owner and stipulators for the damages, interest and costs, and condemned the steamer and her stipulators therefor. The determination of the amount of damages was reserved, and appellant's petition against the impleaded respondent was dismissed with costs against appellant.

On September 28, 1936, after a hearing as to damages, the court filed its findings and conclusions of law. The findings as to amounts received, transported, delivered, damaged, and not delivered coincide with the findings at the time of the interlocutory decree, with the exception that there was an overage in delivery of one bale for which appellant was given credit in the conclusions of law.

As to the other pertinent matters the court in substance found the following facts: Although the damage to the cargo was obvious upon unloading and was then known to appellant, no representative of it and its vessel, with respect to the handling and disposition of the damaged cargo, was appointed until four days after libelant requested that such appointment be made. The damaged and undamaged portions of the cargo were separable, but the damaged portion was so large that it was impossible to separate it and weigh the torn sacks,

bags and bales until after they were unloaded.

By agreement of the parties the separating and weighing were done by the Buffalo Freight Terminal and Warehouse Company during the period beginning January 3, and ending January 13, 1934, which was a reasonable time for such work. The reasonable cost thereof was $677.05 and was paid by libelant.

The court also entered a finding as to the market prices on December 7, the date of delivery of this cargo, of sound, refined sugar in undamaged bags and bales of the various weights and materials here involved, and the decline of such prices on December 8, December 19, and February 6. The size of the damaged cargo and the market conditions made it advisable to endeavor to dispose of it by private sale and to several buyers. By agreement of the parties such sales were negotiated by libelant at fair market prices, and amounted to $50,393.58 which was $5,919.29 less than the fair market value of the cargo on December 7, had it been in sound condition.

All necessary steps toward the separation and fair disposition of the damaged cargo were undertaken and concluded within a reasonable time after its delivery. The value of the undelivered cargo at Buffalo on December 7, 1933, was $1,109.68.

Upon these facts the court in substance concluded: (1) That appellant and its boat were responsible and liable for the cost of separating and weighing the damaged cargo, and for the value of that part not delivered, and for the difference in value of the damaged cargo in sound condition and in damaged condition, including the loss occasioned by the decline in market prices subsequent to December 7 and prior to sale of the damaged cargo; (2) that they were entitled to credit for the value of the overage; (3) that appellee, the libelant, was entitled to recover $677.05 for the cost of separating and weighing; $1,109.68 for the value of the cargo not delivered; and $5,919.29 for the difference between the value of the damaged cargo in sound condition, and in its damaged condition when delivered, less $4.53 for overage, amounting in all to $7,701.49 with interest from December 7, 1933.

The court thereupon rendered judgment against the steamer and its equipment, and against her claimant and stipulators in the sum of $9,266.93 with interest until paid. This amount included the principal sum of $7,701.49 as ascertained damages, together with interest from December 7, 1933, amounting to $1,298.69, and costs taxed at $266.75. It was further ordered that, unless the decree were satisfied or an appeal taken within ten days after notice of the decree to claimant or its proctors, execution issue against Columbia Casualty Company, stipulator. The appeal is prosecuted from this decree, and the errors relied upon arise out of the dismissal of appellant's petition impleading the National Terminals Corporation, and the findings with reference to the alleged shortage.

It is contended by appellant that the damage to the cargo, which seems not to be controverted, except as to the shortage, was caused by the negligence of the stevedores of the National Terminals Corporation, at Milwaukee, while loading, and that while thus engaged, and in issuing the detailed bills of lading, that corporation was acting as an agent or employee of libelant, or as an independent contractor, and not as agent or employee of appellant. Hence appellant insists that the court erred in holding: (1) That the impleaded respondent was an employee of appellant with respect to the stevedoring at Milwaukee, and as agent of appellant with reference to issuing the detailed bills of lading; (2) that the impleaded respondent was not liable over to the appellant for the damage to the cargo, and should therefore be dismissed; and (3) that appellant was liable for the alleged shortage at Buffalo.

■ We are first confronted with the motion to dismiss the appeal as to it by the National Terminals Corporation. It is based on the ground that the interlocutory decree of April 17, 1936, was final as to it, and that the time for taking an appeal therefrom had expired prior to the taking of this appeal. Under the rulings in Oneida Navigation Corporation v. Job & Company, Inc., 252 U.S. 521, 40 S.Ct. 357, 64 L.Ed. 697, and Reid v. Fargo, President of American Express Co., 241 U.S. 544, 36 S.Ct. 712, 60 L. Ed. 1156, we think there is no merit in this contention.

■ All questions presented by appellant primarily involve matters of fact. We think there can be no doubt that both the interlocutory and final decrees are supported by their respective conclusions of law, and that they in turn are supported by their respective findings. We are, therefore, to determine whether the findings of which appellant complains are fairly supported by

the weight of the evidence. We have no doubt that each finding is supported by substantial evidence, but as all matters are here for a trial de novo, we conceive it to be our duty to pass on the weight of the evidence. In doing this, however, we shall have due regard for the findings of the District Court with respect to the credibility of those witnesses who appeared in person. Leathem Smith-Putnam Navigation Company v. Osby (C.C.A.) 79 F.(2d) 280.

■ The record is much too voluminous and contradictory to warrant a detailed discussion of all the testimony. It is agreed that the parties concerned encountered very rainy weather both in the loading of the cargo at Milwaukee, and in the unloading of it at Buffalo, which caused much delay, and required great care in avoiding the soiling and dampening of the cargo, more especially that contained in the white sacks. The weight of the evidence further disclosed that the atmosphere was quite humid even when not raining, and that a characteristic of sugar was to absorb moisture which in turn would cause the sugar to cake and stain the sacks in which it was contained. It was not denied that the hold of the ship, when closed temporarily on account of rain during the loading, sweated and caused water to drip from its ceiling. The evidence discloses that at such time an employee of the impleaded respondent suggested to appellant's officer the use of a tarpaulin to protect the cargo from dripping water, to which that officer replied that he had none.

The vessel left Milwaukee at 1:15 A. M. on November 30. It arrived at Buffalo at 5:30 P. M. on December 3. It began raining again on the evening of December 2, and rained continuously until the morning of December 5. During all of that time the hold of the vessel was closed. Unloading began at 7 A. M. on December 5, and continued until 9:15 P. M. of that day when work was interrupted by a broken cable. Work was again resumed at 10:30 and continued until midnight, when it was interrupted by rain until 11 A. M. on December 6, at which time work resumed and continued until 12:30 P. M. when the unloading was finished.

It would serve no good purpose to set forth all the evidence with respect to the causes of the damage or with respect to the place or places where it occurred. A perusal of the entire record is by no means assuring with respect to these matters, and we are convinced that appellant did not meet the burden required of it in these respects. It is quite true that many of the sacks were soiled by the foot tracks of the stevedores at Milwaukee, but the number is purely a matter of conjecture. As to the other items of damage the evidence is decidedly uncertain. With the exception of five depositions the court saw the witnesses and heard them testify. It concluded that the stevedores and the impleaded respondent at all times exercised due care under all the circumstances of the situation, and we are of the same opinion.

It was proved and not denied that the weather conditions which existed were such as might be expected at that time of year, and that it was quite difficult to move such a cargo safely during such weather. It was further proved without denial that the sugar was loaded in the hold in tiers or rows, one against the other, and that the tiers were necessarily high on account of the size of the cargo. This, it was said, rendered it necessary for the stevedores at times when loading to step or walk upon the bags which had already been placed. The evidence disclosed that their shoes had been cleaned with rags before entering the hold to perform their work, and that they did not have felt or cloth shoes which are sometimes used for that purpose. These facts were known to appellant's ship master who was in charge of the steamer and directed and superintended the loading. We have no doubt that the stevedores' shoes, although cleaned and dried, did leave some imprints upon the white sacks. It would seem incredible that they did not. However, the loading was done under the direction and control of appellant's master of the ship who knew these facts, or could have known them by the exercise of ordinary care, and could have stopped the loading until a more propitious time and more favorable circumstances. He admitted that he was not in the hold of the ship at any time during the loading or transportation of this cargo. Under these circumstances we think that appellant did not establish negligence of the stevedores by a preponderance of the evidence, but on the contrary, the weight of the evidence supports the court's finding that the stevedores at all times exercised due care.

Appellant contends that the impleaded respondent was not its employee or agent,

but that it was either the agent of libelant or an independent contractor. The weight of the evidence did not support either of these contentions, but on the contrary it proved that the impleaded respondent was the agent and employee of appellant.

The weight of the evidence discloses that there was a shortage in delivery of 251 bags, sacks, or bales. This was based upon the detailed bills of lading upon which the transportation charges were calculated and paid. The evidence is not clear as to what became of all the sugar represented by this shortage. However, the contract bound appellant to safely deliver it, or to account for it, or to furnish evidence that would relieve it from liability therefor. This it did not do.

We are convinced that the findings of the District Court are supported by the weight of the evidence and that there was no error in dismissing appellant's petition against the impleaded respondent, or in holding appellant liable for the shortage at Buffalo.

Decree affirmed.