**ROGERS v. PACIFIC–ATLANTIC S. S. CO.**

**No. 11916.**

United States Court of Appeals
Ninth Circuit.
Oct. 8, 1948.

Lord, Anderson & Franklin, of Portland, Or., for appellant.

Wood, Matthiessen & Wood, of Portland, Or., for appellee.

Before DENMAN, Chief Judge, and BONE, Circuit Judge and McCORMICK, District Judge.

BONE, Circuit Judge.

Appellant herein was first Assistant Engineer of the SS Jefferson Meyers, and brought this suit in the Oregon district court, sitting in admiralty, to recover wages claimed due him for the balance of a sea voyage after he was allegedly forced to quit the ship because of fear induced by the ship's Master's threat upon his life. The trial court dismissed the case, finding that the difficulties rose to no higher dignity than that of a "school-yard quarrel."

The Master and appellant were friends and drinking companions at the outset of the voyage on January 7, 1946, and although there had been a minor difficulty involving allotments, the voyage from Vancouver to the Philippines and thence to Shanghai was, as between appellant and the Master, uneventful. The record discloses that the Master was apparently very abusive and overbearing when intoxicated and on this trip at least was intoxicated much of the time and had difficulties with his other officers.

The Jefferson Meyers was under charter to the War Shipping Administration (WSA) and orders had been given that there were to be no guests for meals aboard without prior permission of both the WSA representative and the Captain. In Shanghai on June 19, 1946, while lying off the port of Shanghai, the Chief Mate invited aboard a former employee of the Company, who was also a friend of most of the officers of the Jefferson Meyers. He was still visiting at mealtime, and according to the customs of sea-faring men, and despite the orders of the Captain, was invited to remain for dinner. The Captain, while drunk, ordered the visitor off the ship, whereupon appellant invited him to his stateroom. The Captain was abusive and followed, repeating his order, whereupon the visitor left.

Appellant then composed a letter of complaint to the Company officials in Shanghai. He gave a copy to the Captain and when appellant himself left, the Captain was seen reading it and holding a leather "sap" or blackjack. On the Captain's orders, the Chief Engineer made an entry in his "rough log" listing appellant as discharged, effective that midnight and the Captain also informed the Chief Engineer that if appellant and the Chief Mate were not off his ship by midnight, he would shoot them. This threat he later repeated directly to the Chief Mate who also left. Appellant's only knowledge of such threat came from the Chief Mate and the Chief Engineer. Later the same evening the Captain, still so drunk he was barely able to stand, was seen carrying a gun and was disarmed by the Third Assistant Engineer and a member of the crew. He then retired being later awakened by Shanghai police and taken to the Shanghai jail.

Appellant and the Chief Mate filed charges with the United States Consul and the United States Coast Guard in Shanghai, following which on June 26th an inquiry was held. The Captain was "admonished" and the two officers were ordered back to their ship, but both were apparently unwilling to return without this order being in writing and directed to them. Appellant claims to have made several attempts to obtain such a writing and the Master claims that he made continuous but futile efforts to locate appellant after he left the ship. On July 5th, appellant left for the United States as a "stowaway" on another vessel. The Chief Mate received a written communication from the Coast Guard on July 8th ordering him to return to the vessel and he complied.

The Jefferson Meyers left Shanghai on July 11th and appellant was then logged as a deserter. To further demonstrate the character of the Captain, evidence was admitted by the trial court to show that on the return trip, the Captain attempted to have both the Second and Third Mate plac-

ed in an Army prison stockade in Batangas, P. I., for extending a dinner invitation to a Filipino business man from whom the Second Mate was attempting to buy fresh fruits and vegetables to replenish the ship's stores.

The evidence indicates that the disposition of Captain Hughes, drunk or sober, was not calculated to create harmony aboard the Jefferson Meyers. However, mere disharmony aboard ship, unpleasant regulations, and a master indifferent to social amenities, can not alone justify abandonment of a seaman's contractual duty to complete the voyage for which he signed. The sole issue presented here is one of fact: whether appellant was reasonably in fear of his life when he quit the ship and thus justifiably refused to return when ordered to do so by the United States Consul and Coast Guard.[1]

 A seaman or officer may be justified in leaving the vessel under the compulsion of fear induced by cruel treatment or by threats upon his life. However such action is not justified by an over-excess of timidity, wounded pride, or because, as we find here, differences which the trial court found to be but of a petty nature. The United States Consul and Coast Guard, stationed at Shanghai, investigated the affair and although admonishing the Captain, found that appellant's life or physical safety was not endangered. Also, the Chief Mate, the only one to whom any actual threats were made, felt sufficiently secure to return to the ship. By the testimony of appellant's own witnesses, the Captain was so drunk and incoherent when the threats were made he could hardly either stand or be understood.

Under these circumstances, a thorough consideration of this record leaves us with the conviction that the analysis of the lower court, that this incident was devoid of the sinister implications attached to it by appellant, was supported by the evidence. Whether it was a childish fuss resulting from the heat, drink, unpleasant cargo, and the cumulation of a number of real or fancied grievances, were questions of fact which the trial court had to resolve.

 Appellant contends, that an appeal in Admiralty entitles him to a trial de novo. Irvine v. The Hesper, 122 U.S. 256, 7 S.Ct. 1177, 30 L.Ed. 1175; Reid v. Fargo, 1915, 241 U.S. 544, 36 S.Ct. 712, 60 L.Ed. 1156; The John Twohy, 1920, 255 U.S. 77, 41 S.Ct. 251, 65 L.Ed. 511. Here the entire case rested on conflicting oral testimony. The trial court observed the witnesses, their appearance, demeanor and credibility. He should not be reversed except for inherent improbability or plain error. See Portland Tug & Barge Co. v. Upper Columbia River Towing Co., 9 Cir., 1945, 153 F.2d 237, certiorari denied 1947, 328 U.S. 863, 66 S.Ct. 1367, 90 L.Ed. 1632, and cases cited. We cannot say that we find such here.

The technical issue of desertion, sufficient to justify the denial to appellant of wages already earned, under 46 U.S.C.A. § 701, is not presented here.

Affirmed.

---

[1] Under 46 U.S.C.A. § 685, the United States Consul is authorized to investigate such cases and if the seaman has good grounds for his complaint, to require the Master to pay the seaman one extra month's wages and to provide him with either adequate employment or passage to the port of origin.