**McLAIN LINES, Inc. v. THE ANN MARIE TRACY.**

**THE MAVIS.**

No. 248, Docket 21308.

United States Court of Appeals Second Circuit.

Argued June 14, 1949.

Decided July 27, 1949.

710

Foley & Martin, New York City, Proctors for appellant; Christopher E. Heckman and William J. O'Brien, New York City, Advocates.

Macklin, Brown, Lenahan & Speer, New York City, Proctors for claimant-appellee; Gerald J. McKernan and Martin J. McHugh, New York City, Advocates.

Before SWAN, and CHASE, Circuit Judges, and SMITH, District Judge.

SWAN, Circuit Judge.

While in tow of the tug Tracy on February 2, 1943, the coal barge Mavis sustained damage when swells were encountered which caused the tug to surge and roll against the barge. The owner of the Mavis libelled the tug, alleging negligence in the handling of its tow. The claimant of the tug impleaded the city of New York, alleging that the swells were caused by the negligence of the city's ferryboat, American Legion. After a trial the district court entered on June 17, 1944 an interlocutory decree awarding the libellant recovery against the city of New York and dismissing its libel without costs as against the tug Tracy. On appeal by the city we reversed the decree against the city and refused to consider that part of the decree dismissing the libel against the tug because the libellant had assigned no error.[1] McLain Lines petitioned the court for reargument "in order that petitioner may be relieved of its failure" to assign error, and may "obtain this Court's decision on the merits of its claim against the tug." At the court's request the tug owner filed an answer to the petition. The court denied the petition without opinion. Thereafter, on March 13, 1945, a final decree on mandate was entered, reversing the interlocutory decree, dismissing the libel, and awarding the city trial and appellate court costs against the libellant. The present appeal is from so much of this decree as dismisses the libel; it seeks to bring up for review so much of the interlocutory decree as dismissed the libel against the tug.

The first question is whether the issue of the tug's liability is open for consideration on this appeal. The appellee argues that the interlocutory decree of June 17, 1944 was a final decree with respect to the non-liability of the tug, and that the time for appealing therefrom had expired prior to the taking of the present appeal. This contention is not supportable. Gartland S. S. Co. v. Utah-Idaho Sugar Co., 7 Cir., 92 F.2d 940, 942; Western States Mach. Co. v. S. S. Hepworth Co., 2 Cir., 152 F.2d 79, 80. Plainly the decree of June 17th was interlocutory.

[1] City of New York v. McLain Lines, 2 Cir., 147 F.2d 393, 396:

"As libellant assigned no error with respect thereto, we can consider neither the findings and conclusions that the tug acted properly nor that part of the decree dismissing the libel against the tug."

It was appealable under 28 U.S.C.A. § 227, now 28 U.S.C.A. § 1292, because it determined "the rights and liabilities of the parties." But it did not determine them finally. Had no appeal been taken from it, the district court could have vacated it and changed the relief granted. See Barbarino v. Stanhope S. S. Co., 2 Cir., 150 F.2d 54; Id., 2 Cir., 151 F.2d 553. Similarly, had there been no prior appeal, the libellant's present appeal from the final decree dismissing his libel would bring up every issue raised by the pleadings, and the appellate court would determine them without regard to the interlocutory decree below. The Townsend, 2 Cir., 29 F.2d 491. The real question is not as to the timeliness of the present appeal but whether the prior appeal forecloses the libellant from now raising the issue of the tug's liability.

■■■ We hold that the libellant is not foreclosed by the prior appeal. The applicable principles are well expounded in A. & R. Realty Co. v. Northwestern Mut. Life Ins. Co., 8 Cir., 95 F.2d 703, 707. After referring to the holding in Bissell Carpet-Sweeper Co. v. Goshen Sweeper Co., 6 Cir., 72 F. 545, 555 that if, upon an appeal from an interlocutory order, the appellate court is required to pass upon the merits of the case, a second appeal from the final decree, which challenges the same interlocutory order, can involve only matters affecting such order subsequent to its entry, since the appellate court cannot be required to review the same order twice on the same grounds. Judge Sanborn's opinion continues: "The converse of this ruling would be that where no appeal had been taken from the interlocutory order or where, if taken, the appellate court was not required to and did not pass upon the merits of the controversy in deciding the appeal, a subsequent appeal from the final decree could properly challenge the validity of the interlocutory

order and invoke a decision upon the merits."

To similar effect is the decision of our own court in Western States Mach. Co. v. S. S. Hepworth Co., 152 F.2d 79, 81 where Judge Chase said: "But errors in the interlocutory decree not passed upon in this court and not embraced in our mandate were not made immutable; and the district court was not required to carry into the final decree errors which had lurked unnoticed by this court in the interlocutory decree." See also Mutual Life Ins. Co. v. Hill, 193 U.S. 551, 24 S.Ct. 538, 48 L.Ed. 788, holding that a judgment of reversal is not necessarily an adjudication of any other than the questions in terms discussed and decided, and that on a second review all questions appearing on the record which have not already been decided are open for consideration. In the case at bar, on the previous appeal we expressly refused to consider the findings and conclusions of the district court that the tug was free from fault.[2] Consistently with the principles above discussed that question should be open on the present appeal.

■■■ The appellee, however, vigorously contends that by failing to file cross-assignments of error as required by the Rules of this court the libellant has waived its right to question dismissal of the libel against the tug.[3] The argument stresses the fact that after the decree against the city was reversed the libellant petitioned for a rehearing in order that it might be relieved of failure to comply with the Rule and obtain a decision on the merits of its claim against the tug, and the further fact that after the tug owner, at the court's request, had filed a brief in answer to the petition for rehearing, the petition was denied. It is true that the court may relieve an appellee from non-compliance with the Rule. Schiavone-Bonomo Corp. v. Buffalo Barge Towing Corp., 2 Cir., 134

[2] See note 1 supra.

[3] Rule 38(3) of the Rules in effect when the appeal from the interlocutory decree was taken (Rule 13 of the presently effective Rules, see Benedict, Admiralty, 6th ed. Vol. 5, p. 37) provided that "If the appellee desires other or further relief than that granted by the decree, he must, within ten days after the appellant has served his Notice of Appeal, file with the clerk of the district court and serve on the proctor for the appellant, an assignment of errors."

F.2d 1022, certiorari denied 320 U.S. 749, 64 S.Ct. 53, 88 L.Ed. 445. But denial of the petition, without stating reasons, indicates nothing more than adherence to enforcement of the Rule. It cannot reasonably be taken as evidence that the court did in fact waive non-compliance and consider the very questions which its opinion had stated were not to be considered. In the absence of the Rule, the whole case would have been opened by the city's appeal, as much as it would have been if both parties had appealed, or if the appeal had been taken only by the libellant. Irvine v. The Hesper, 122 U.S. 256, 267, 7 S.Ct. 1177, 30 L.Ed. 1175; Langnes v. Green, 282 U.S. 531, 536, 51 S.Ct. 243, 75 L.Ed. 520; The San Rafael, 9 Cir., 141 F. 270, 275; The Mary Ethel, 2 Cir., 294 F. 525, 527. The Rule of this court modified this practice to the extent of requiring an appellee to assign error, if he desired an interlocutory decree to be changed in his favor on that appeal. Errors not so assigned may, as the present appellee argues, be considered waived; but the waiver is limited to that appeal. There is nothing in the Rule to suggest that such waiver will preclude a party from raising on another appeal, that is, one from the final decree, the questions which might have been but were not raised on the prior appeal. Western States Mach. Co. v. S. S. Hepworth Co., 152 F.2d 79 is a direct holding by this court that he may do so. Accordingly we turn to the merits of the appeal.

The trial judge made detailed findings of fact which were set forth in full in our previous opinion, 147 F.2d 393, and need be here repeated only in summary. The swells set up by the ferryboat caused the tug and coal barge to surge and roll, and while rolling the Tracy struck against the port side of the Mavis, thereby causing the damage complained of. The judge found that the ferryboat's speed was "excessive under the circumstances." We set aside this finding and exonerated the ferryboat because her distance from the tug and tow was such that her navigator was not chargeable with a duty to foresee that the swells were likely to strike the barge

before they ran out sufficiently to make them harmless. The appellee urges that if the navigator of the ferryboat was not chargeable with foreseeing the danger, neither was the navigator of the tug. But the question as to the tug is not the same. As to her the question is whether her navigation was proper after she did see the swells. On this subject the facts were as follows: The tug had the barge on her starboard side, made fast in the usual and customary manner. When the master of the tug observed the swells he stopped the tug's engines and ordered one deckhand to take a position near the bow bitts and the other near the stern bitts. When it was seen that the swells would cause the tow to ride and surge more than usual, the lines between the tug and the barge were slackened. The district judge was of the opinion (Finding 10) that those in charge of the tug "did all that could reasonably have been done to avoid damage from the swells caused by the American Legion." With this conclusion we are unable to agree. According to the expert testimony of Captain Oakes, two courses of action were open to the tug: either she should keep her lines taut so that the tug and tow will bob up and down together while heading directly into the swells, or she should slack her lines in time for the barge to drift free of the tug before the swells hit, for otherwise the vessels will bang together and cause damage. The master of the Tracy followed neither of these courses. He testified that he headed directly into the swells, stopped his engines a minute or two before the swells reached him but did not slacken his lines until after the first swell hit. The deck-hand corroborated this, and also testified that the contact between the tug and barge occurred after the lines were slacked off. He gave it as his opinion that if the lines had not been slacked they would either have broken "or the boat would have made lots more damage than it did." But a deck-hand's opinion should hardly outweigh that of so experienced a tug-boat master as Captain Oakes. The district judge made no reference in his oral opinion to either the testimony of Captain

Oakes or that of the deck-hand. We find persuasive Captain Oakes' expert opinion that good navigation required the tug either to keep the lines taut so as to enable the tug and barge to ride the swells together, or, if the other course were to be adopted, to slacken the lines soon enough to permit the tug and tow to drift far enough apart before the swells reached them to avoid the danger of surging together. In failing to follow either of these courses we think the tug was negligent. Accordingly the decree of dismissal is reversed and the cause remanded for entry of an interlocutory decree in favor of the libellant as against the tug.