**BLEAKLEY TRANSPORTATION CO., Inc., as owner of THE scow HARVARD, Libellant-Appellant,**

v.

**COLONIAL SAND & STONE CO., Inc., Respondent-Appellee,**

and

**THE Oil Tanker S. D. MADDOCK, Impleaded.**

No. 345, Docket 24360.

United States Court of Appeals Second Circuit.

Argued May 10, 1957.

Decided June 7, 1957.

Purdy, Lamb, & Catoggio, New York City (Edmund F. Lamb, New York City, of counsel), for libellant-appellant.

Macklin, Speer, Hanan & McKernan, New York City (Leo F. Hanan, New York City, of counsel), for respondent-appellee.

Before CHASE, HINCKS and LUMBARD, Circuit Judges.

CHASE, Circuit Judge.

The appellant's wooden scow, Harvard, having a length of one hundred feet, a width of thirty-six feet and being ten feet deep, arrived fully loaded with sand and gravel consigned to the appellee at the appellee's dock at Eastchester Creek on August 20, 1948. Her unloading was not begun until the next afternoon and meanwhile she lay aground on an uneven bottom at the dock and two keelsons in Section 7, the fourth and fifth from the port side, were cracked and some crushing occurred. When she was unloaded, she was put in drydock and a survey, held on August 24, 1948, set the cost of new keelsons to replace the damaged ones at $630.00 but, because the removal and replacement of many undamaged bottom planks and crossbraces, as well as other work, was needed to remove the keelsons and put in new ones, the estimated expense of repairs by keelson renewal was $8,903.00. Representatives of the appellee attended the survey but didn't sign it. They took the position that the scow could, and should, be restored to a condition as good for all practical purposes as before without replacing the keelsons. The scow was used until October without any repairs; then was repaired at a cost of $938.12 without the installation of new keelsons; and was shown to have been, thereafter, as serviceable as before the damage up to the time of the hearing, a period of about seven years.

After the suit was brought, the Oil Tanker S. D. Maddock was impleaded,

being accused of creating swells and suction when she passed the scow when it was at the dock and causing damage, but the impleading petition was dismissed and no question is raised as to that.

After the interlocutory decree for the libellant was entered, there was a reference to a commissioner to find the amount of the damages. He reported that "* * * the October reinforcements restored the Harvard to substantially the same degree of strength, seaworthiness and practical serviceability as before the stranding; that these reinforcements in fact constituted permanent, and not temporary repairs; and that they did not leave the scow inferior for practical use as a 'profit-earning machine.'" He also found that there was some depreciation on account of repairing, without replacement, of the keelsons but was unable to determine its amount as witnesses for the appellant were all, but one, unwilling to testify as to such a speculative matter in terms of money or percentage of diminution of previous sound market value. The witness who did testify as to the amount of depreciation at first set it at $6,500.00 and then, while explaining his method for determining depreciation, made some computations and raised the amount to $7,200.00. He was asked whether his method for determining depreciation which he had described was a "well-known method amongst surveyors and appraisers, or is that just your private method?" His answer was, "Well, based on what I have heard in this case, the two days I have attended here, hearing other witnesses, I would have to agree, since no one else had the courage to offer a method, that it is my individual method, based on my experience, because I knew they all shied away from it."

The commissioner characterized his method as one of "pure speculation" and the record does, indeed, indicate that it was. Moreover, the commissioner who saw and heard the witness testify, was in a good position to determine whether this evidence was worthy of credence and nothing appears to warrant interference with his judgment, accepted by the trial court, in respect to it. That leaves the record barren of evidence on which to find the amount of depreciation.

■ The owner of a vessel damaged by the negligence of another is entitled to recover from the wrong-doer the reasonable cost of its restoration to as good condition as before the damage, save only that such expense does not exceed the before-damage value, and this is so even though no repairs, or only partial repairs, are actually made. The Baltimore, 8 Wall. 377, 75 U.S. 377, 19 L.Ed. 463; O'Brien Bros. v. The Helen B. Moran, 2 Cir., 160 F.2d 502; Pennsylvania R. Co. v. Downer Towing Corporation, 2 Cir., 11 F.2d 466; The Ames & Carroll No. 20, 2 Cir., 66 F.2d 413; Nassau Sand & Gravel Co., Inc., v. Red Star Towing & Transportation Co., Inc., 2 Cir., 62 F.2d 356.

■ While often the reasonable cost of the restoration of the vessel to its pre-damage condition is the fair measure of the full indemnity to which the injured party is entitled, that is not always so. When the cost of the actual replacement of damaged parts is disproportionate to the cost of repairing them so as to put the vessel in as good condition for use as before the injury, the reasonable cost of such repairs without replacement, plus what depreciation is proved, both satisfies the injured party's obligation to minimize the damages and the wrong-doer's obligation to pay for the damage he has caused. Zeller Marine Corp. v. Nessa Corp., 2 Cir., 166 F.2d 32; Nassau Sand & Gravel Co., Inc., v. Red Star Towing & Transportation Co., Inc., supra. What Judge Addison Brown said in The J. T. Easton, D.C., 24 F.2d 95, 96, states the applicable measure of damages where the pertinent facts are as they were found to be in the instant case. "An owner whose boat is damaged by the negligence of another is entitled to have his boat repaired in a way which will not leave her essentially depreciated in her market value, or inferior for practical use.

But where an injury can be perfectly repaired for all practical uses at slight expense, but, as in this case, cannot be placed in exactly the same condition as new except by taking out and replacing much other good work at a very considerable expense, the court must hesitate in allowing damages on the basis of the latter mode of repair, especially where, as in this case, though a long time has elapsed, no such repair has been made. The court could only be warranted in allowing for new beams upon very plain and certain proof that the market value of the boat will otherwise be materially and certainly lessened."

 Without credible evidence to show the amount of depreciation, the appellant failed to discharge its burden to prove a recoverable depreciation loss and no error appears in that regard. Zeller Marine Corp. v. Nessa Corp., supra; Sawyer v. Oakman, Fed.Cas.No. 12,402, 7 Blatchf. 290; The Loch Trool, D.C.N.D.Calif., 150 F. 429.

Before reaching the merits of the appellee's attack upon the interlocutory decree holding it liable for the damage to the scow, we must decide the procedural question presented by its failure to file a notice of cross-appeal.

 Traditionally, an appeal in admiralty brings the case up for trial *de novo* and all issues are open for decision. T. M. Duche & Sons, Ltd. v. The John Twohy, 255 U.S. 77, 41 S.Ct. 251, 65 L.Ed. 511; Irvine v. The Hesper, 122 U.S. 256, 7 S.Ct. 1177, 30 L.Ed. 1175; Read v. United States, 3 Cir., 201 F.2d 758. Nevertheless, Langnes v. Green, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520, makes it clear that, while an appellate court has the power to hear issues an appellee seeks to raise without having taken a cross-appeal, it will hesitate to exercise the power unless the particular case presents sound reasons for so doing. We have followed that practice. Petterson Lighterage & Towing Corp. v. New York Central R. Co., 2 Cir., 126 F.2d 992; Untersinger v. United States, 2 Cir., 181 F.2d 953.

Until Rule 13 of this Court, 28 U.S. C.A., which provided that an appellee must file with the clerk of the district court and serve on the proctor for the appellant an assignment of error as a prerequisite to obtaining relief from the decree, was changed in 1954 to make our procedure conform to that provided in Rule 73, Fed.Rules Civ.Proc. 28 U.S.C.A., we refused to grant relief to an appellee who filed no assignment of error. City of New York v. McLain Lines, 2 Cir., 147 F.2d 393. But see, McLain Lines v. The Ann Marie Tracy, 2 Cir., 176 F.2d 709. Since the appellee's attack upon the interlocutory decree without any assignment of error would not now be contrary to any rule of this court, the appellant's appeal opened the entire case for review and we have the power to grant relief to the appellee as well as to the appellant.

However, the appellee has shown no adequate ground for permitting it to have the question of liability established by the interlocutory decree now re-determined and we decline to do so.

Decree affirmed.