**EMPACADORA PUERTORRIQUEÑA DE CARNES, INC., Plaintiff,**

v.

**ALTERMAN TRANSPORT LINE, INC. and South Atlantic and Caribbean Line, Inc., Defendants.**

Civ. No. 475–68.

United States District Court
D. Puerto Rico.

Sept. 19, 1969.

---

Juan R. Torruella, Hato Rey, P. R., for plaintiff.

Nicolas Jimenez, Jose Antonio Fuste, San Juan, P. R., for defendants.

## ORDER and MEMORANDUM OPINION

FERNANDEZ - BADILLO, District Judge.

This suit to recover cargo damage was originally filed on September 12, 1966 against various defendants, including South Atlantic and Caribbean Line, Inc. (hereinafter referred to as SACAL), in the Superior Court of the Commonwealth of Puerto Rico, San Juan Section. On July 3, 1968 plaintiff filed an amended complaint before said court and process was served on defendant SACAL on July 5, 1968, more than two years after the date of delivery of the goods.[1] The action was removed to this Court by SACAL on July 23, 1968 and shortly thereafter plaintiff notified its voluntary dismissal against co-defendant Alterman

---

1. The damaged goods were delivered on September 14, 1965.

Transport Line, Inc. These relevant facts are not disputed. SACAL, sole party defendant in this action, has filed a motion for summary judgment accompanied by affidavit [2] and various exhibits basically alleging that it "is entitled to judgment as a matter of law due to the fact that the present action is time barred by the contractual statute of limitations incorporated in the contract of carriage between the parties."

The damaged cargo is a shipment of meat carried under bill of lading number 69–P issued by SACAL and transported from Miami to San Juan aboard the S. S. Floridian, a vessel owned by defendant carrier. The goods were allegedly damaged during the period of transportation between these two ports when the interior and exterior roofs of the refrigerated van collapsed causing the distribution lines of the refrigerated system thereof to break. The spoiled meat was destroyed in accordance with a judicial order and plaintiff has claimed the sums of $14,140.17 and $7,500 as resulting losses.

The bill of lading used in the transportation of this cargo contains a clause paramount which reads as follows:

"This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the Carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this Bill of Lading be repugnant to said Act to any extent, such term shall be void to that extent, but no further. The provisions stated in said Act (except as may be otherwise specifically provided herein) shall govern before the goods

are loaded on and after they are discharged from the ship and throughout the entire time the goods are in the custody of the Carrier. * * *"

With these words the United States Carriage of Goods by Sea Act, 46 U.S.C. §§ 1300–1315 (hereinafter referred to as COGSA or the Act of 1936) was made a part of the contract of carriage as evidenced by the bill of lading. The parties agreed in said clause to apply the terms of the statute throughout the entire period when the shipper-carrier relation existed and not merely from tackle to tackle.[3]

There is a special clause included in the bill of lading which has given rise to the controversy between the carrier and claimant. Clause number 19 specifically provides:

"In any event the Carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after the delivery of the goods or the date when the goods would have been delivered. Suit shall not be deemed brought until jurisdiction shall have been obtained over the Carrier and/or the ship by service of process or by an agreement to appear."

It is movant's contention that according to this provision the present suit is time barred for process was not served upon it until more than two years after the delivery date. Suit was simply not brought within the contractual limitation period agreed upon in clause 19 of the bill. Plaintiff cargo owner argues in turn that the provisions of the bill of lading issued and prepared by SACAL "are in such fine print as to require the use of a magnifying glass" and that "it is a fundamental rule of construction that doubtful or conflicting language be interpreted against the party who has selected the language or drawn

---

**2.** The supporting affidavit of Mr. Bob Leith, vice-president of SACAL, sets forth a series of dates such as the date of filing of the action, date when he was served with process and date of delivery of the merchandise and the contractual time limitation which allegedly bars the present action.

**3.** 46 U.S.C. § 1307; Knauth, Ocean Bills of Lading, Fourth Edition, page 167.

the contract, especially where he seeks to use such language to defeat the contract or its operation * * * SACAL cannot hide behind the confusion thus created."

 (1) It is true as plaintiff urges that the courts have consistently held that the instituting or filing of suit constitutes the bringing of suit within one year as required by the Carriage of Goods by Sea Act, 46 U.S.C. § 1303(6) [4] irrespective of the time when process is issued,[5] United Nations Relief & R. Adm. v. The Mormacmail, 99 F.Supp. 552, 554 (S.D.N.Y., 1951); Ore Steamship Corporation v. D/S/A/S Hassel, 2 Cir., 137 F.2d 326, 329 (1943); Internatio-Rotterdam, Inc. v. Thomsen, 218 F.2d 514, 516 (4th Cir., 1954). The situations which gave rise to these suits, however, were governed *exproprio vigore* by COGSA for they involved claims arising from the sea carriage of goods in foreign trade and also the bills of lading covering the contracts of carriage in two of these cases contained time for suit provisions of one year without further specification.[6] The Act does not apply of its own force either to carriage of goods not in foreign trade or to cargo carried on deck [7] under provisions in the bill of lading for on-deck carriage. Waterman

S. S. Corp. v. United States Smelting, Refining & Mining Co., 155 F.2d 687, 691 (5th Cir., 1946); cert. den. 329 U.S. 761, 67 S.Ct. 115, 91 L.Ed. 656; 46 U. S.C. §§ 1301(c) and 1312. Section 1312 which fixes the scope of the statute's terms provides that:

"This chapter shall apply to all contracts of carriage of goods by sea to or from ports of the United States in foreign trade. As used in this chapter the term 'United States' includes its districts, territories and possessions. The term 'foreign trade' means the transportation of good between the ports of the United States and ports of foreign countries. *Nothing in this chapter shall be held to apply to contracts for carriage of goods by sea between any port of the United States or its possessions, and any other port of the United States or its possessions: Provided, however, That any bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea between such ports, containing an express statement that it shall be subject to the provisions of this chapter, shall be subjected hereto as fully as if subject hereto by the express provi-*

---

4. 46 U.S.C. § 1303(6) provides the statutory limitation of actions brought under the Act:
 "In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered * * *."

5. The previous ruling of this Court dated November 29, 1968 on which plaintiff relies took into consideration only the statutory provision of the Carriage of Goods by Sea Act expressed in 46 U.S.C. § 1303 (6). No interpretation was made of the contractual clauses taken as a whole, specifically in our case of those pertaining to the time limitation of actions for loss and damage.

6. In the *Ore* case the cargoes were damaged during a transatlantic voyage of the steamship Cypria which would make COGSA apply of its own force even

though incorporated by reference and the bills of lading provided for a one year limitation of the action. The *United Nations* suit arose from "alleged damage to cargoes shipped via three of respondent's vessels from ports in the United States to Gdynia, Poland," p. 554. Finally in the *Internatio-Rotterdam* opinion where no details are given as to the ports called at the Court specifically points out at p. 515:
 "Both suits were filed within the twelve month period of limitation *prescribed by bills of lading and the Carriage of Goods by Sea Act*, 46 U.S.C. § 1303(6) * * *."

7. 46 U.S.C. § 1301 provides:
 "When used in this chapter—
 (c) The term 'goods' includes goods, wares, merchandise, and articles of every kind whatsoever, except live animals and cargo which by the contract of carriage is stated as being carried on deck and is so carried."

*sions of this chapter* \* \* \*." (Emphasis supplied.)

Thus it is clear that COGSA does not apply *proprio vigore* to the present situation which does not at all involve foreign trade. This is the case of a shipment of goods which was allegedly damaged during transportation between two ports of the United States, specifically from Miami to San Juan. The statute was adopted by express agreement of the parties who incorporated it by reference in clause 1 of the bill of lading to govern the entire period of their relation "except as may be otherwise specifically provided herein."

■ (2) Where a statute is incorporated by reference its provisions are merely terms of the contract evidenced by the bill of lading and the court has the duty to construe the contract to give consistent effect, if possible, to all of its terms. The contract clauses must be read together and harmonized whenever reasonably possible. Pannell v. United States Lines Company, 263 F.2d 497, 498 (2nd Cir., 1959); In Re Petterson Lighterage & Towing Corporation, 154 F.Supp. 461, 467 (S.D.N.Y., 1957). Plaintiff contends that doubtful and conflicting language contained in a contract must be interpreted against the draftsman, who in our case happens to be the carrier. The Court is aware that the matter before it is one of interpretation. It must determine whether there really is ambiguity and conflict between the clauses as claimed. Turning to the

bill of lading one finds a clause paramount which incorporates by reference the terms of COGSA "except as may be otherwise specifically provided" therein and a special clause, numbered 19 in the bill, which, although using identical words as those contained in the time for suit provision of the Act [8] [46 U.S.C. § 1303(6)] immediately goes on to provide that "suit shall not be deemed brought until jurisdiction shall have been obtained over the carrier and/or the ship by service of process or by an agreement to appear." [9]

■ These provisions are neither conflicting nor doubtful in meaning. The intention of the parties is clearly manifest from the terms of the contract of carriage stated in the bill of lading. COGSA was adopted to govern their relation "except as \* \* \* otherwise specifically provided" and as to the matter of limitation of actions for loss or damage they specifically laid down how the one year period within which to bring suit required by the statute was to be computed. This was done in clause 19 of the bill. The first sentence of said clause contains the one year statutory provision for bringing suit of COGSA and the words immediately following it plainly spell out what is to be understood by bringing suit. Bringing suit is deliberately and unambigously defined as obtaining jurisdiction over the carrier or ship by service of process or by an agreement to appear. There is nothing contradictory or repugnant in the terms of

8. These words are found both in § 1303 (6) of COGSA and in clause 19 of the bill of lading:

"In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered \* \* \*."

9. There is no indication that plaintiff was unfamiliar with the contents of the bill of lading other than the allegation that its provisions are in such fine print as to require the use of a magnifying glass.

The clauses of the bill of lading in this case follow the Uniform North Atlantic Bill of Lading recommended to the steamship lines participating in the Associated North Atlantic Freight Conferences on March 10, 1937 and reproduced in Knauth-Ocean Bills of Lading, Fourth Edition, p. 93 et seq. The time for suit provision in this bill is identical to the one contained in said form.

It would seem unreasonable and inequitable to sustain plaintiff's position whereby it invokes the clauses of the bill of lading when they work to its advantage but repudiates the contract when it becomes disadvantageous.

Clause 19. It merely makes reference to a general provision which is immediately qualified by a more specific one. The specific controls the general. Williston on Contracts, Third Edition, Section 624. The Court of Appeals for the Second Circuit applied this rule of construction in the case of J. Aron & Company v. The Askvin, 267 F.2d 276 (1959) [10] where the libel for cargo damage was filed within the one year statutory provision of COGSA but no process was issued and no jurisdiction of respondent was obtained until much later. The bill of lading in that case contained a clause almost identical to clause 19 here in issue. The court, upholding the validity of said clause, affirmed judgment for respondent in these words:

"The appellant cargo owner argues that this provision [referring to clause 20 which required service of process within one year] is invalid because the Carriage of Goods by Sea Act, 46 U. S.C.A. § 1303(6) requires suit to be 'brought' within one year, and the courts have construed 'brought' to mean libel filed. Ore. S. S. Corp. v. D/S/A/S Hassel, 2 Cir., 137 F.2d 326, 329. But the Carriage of Goods by Sea Act does not apply *ex proprio vigore* after the goods are discharged from the ship. Section 46 U.S.C.A. § 1301(e). Hence the statute is relevant only because it is incorporated by reference in clause 4 of the bill of lading. Clause 4 incorporates it as a term of the contract 'except as otherwise specifically provided.' Effect should be given to all the contract terms and the specific controls the general * * *"

10. Plaintiff argues that this case is inapplicable to the present factual situation because there the damage occurred after discharge from the vessel. This contention is without merit. In the *Aron* case the court found that COGSA did not apply *ex proprio vigore* because the goods had been discharged from the ship, 46 U.S.C. § 1301(e). In the case at bar

In the case of Pannell v. United States Lines Company, supra, the Second Circuit again followed this view where COGSA was incorporated by reference in the bill of lading and therefore did not operate as a matter of law. The court there said:

"The parties have defined what 'package' means in the bill of lading. We see no reason why this specific definition should not prevail over the general term 'package' contained in the Act. * * *"

■■ There being no problem of ambiguity or inconsistency in the contract as evidenced by the bill of lading the Court will not apply the rule that conflicting language will be interpreted most strongly against the draftsman. Mamiye Bros. v. Barber Steamship Lines, Inc., 241 F.Supp. 99, 106 (S.D.N.Y., 1965). This rule should be applied only where, after the ordinary rules of construction have been applied, the contract is still ambiguous. Saturn Oil & Gas Co. v. Northern Natural Gas Co., 359 F.2d 297, 302 (8th Cir., 1966); 17 Am.Jur. 2nd, Contracts § 276. This is certainly not our case. Having read the provisions in controversy together and construing the contract to give consistent effect to all of its terms, the Court is of the opinion that clause 19 of the bill of lading is a valid provision and that the present action is time barred because plaintiff did not comply with what it expressly agreed to therein.

Accordingly, it is hereby ordered, adjudged and decreed that the Motion for Summary Judgment filed by defendant be and is hereby granted.

COGSA does not apply *ex proprio vigore* because it involves a contract of carriage of goods by sea between two ports of the United States, 46 U.S.C. § 1312. In both cases COGSA was incorporated by express statement to that effect contained in the bill of lading thus making it a part of the contract "except as otherwise specifically provided."