Rose **LUCCHESE, Plaintiff,**
v.
**MALABE SHIPPING CO., INC., et al.,**
**Defendants.**
**Civ. No. 223–69.**

United States District Court,
D. Puerto Rico.
Nov. 9, 1972.

---

8. Note, 38 U.Chi.L.Rev. 316, 327 (1971).

Luis A. Lugo, San Juan, P. R., for plaintiff.

Jimenez & Fuste, José A. Fuste, San Juan, P. R., for defendants.

## MEMORANDUM ORDER

CANCIO, Chief Judge.

This is an action of admiralty and maritime jurisdiction as more fully appears from the file of this case, which was originally commenced in the Superior Court of Puerto Rico, San Juan Section, pursuant to the Saving to Suitor's Clause contained in 28 U.S.C.A. § 1333, and removed therefrom to this Court pursuant to 28 U.S.C.A. §§ 1337, 1441, and the applicable case law. The Crispin Co. v. Lykes SS. Co., 134 F.Supp. 704 (S.D.Tex.1955); The Commonwealth of Puerto Rico v. Sea-Land Service, Inc. et al., 349 F.Supp. 964 (D.C.P.R.1970). The same involves the applicability of the $500-per-package limitation contained in Section 1304(5) of the Carriage of Goods by Sea Act (46 U.S.C.A. § 1304(5) to a Sea-Land Service, Inc. trailer containing a shipment of household goods transported from Continental United States to the port of San Juan, Puerto Rico.

The facts, from the standpoint of the motion for summary judgment filed by co-defendant Sea-Land Service, Inc. now under consideration by this Court, are undisputed. For the purposes of summary judgment only, co-defendant Sea-Land Service, Inc. has admitted all the facts contained in the complaint as limited by an order to strike certain pleadings given in open court by Judge Sylvester J. Ryan, sitting by designation, on August 15, 1969, limiting the amount

of recovery to $10,000.00 maximum liability. That being the case, for the purpose of its motion for summary judgment, Sea-Land Service, Inc. admits that plaintiff, Rose Lucchese, on or about the first days of May, 1968, contracted the services of Malabé Shipping Co., Inc., which is a freight forwarder, to transport certain household goods belonging to her from New York to Rio Piedras, Puerto Rico; that said household goods were covered by an insurance policy issued by Commercial Union Insurance Company of New York in the amount of $10,000.00; that the actual maritime transportation was carried out by Sea-Land Service, Inc.; that said household goods were damaged by water while in transit during the month of June 1968; and that she has suffered damages in the amount, of $10,000.00 as limited by the order entered by Judge Ryan as above mentioned. Further the file shows as undisputed from the face of the motion for summary judgment that on June 10, 1968, Sea-Land Service, Inc. issued in its regular short-form bill of lading a set short-form bill of lading covering Trailer 40–893 to be transported on board the SS. Trenton, Voyage 9, from the port of Elizabeth, New Jersey, to San Juan, Puerto Rico; that the bill of lading was issued to Malabé Shipping Co., Inc. with address at 47 Bergen Street, Brooklyn, New York, as shipper, and consigned to Malabé Shipping Company, Inc. with address at Rio Piedras, Puerto Rico. Arrival notice of the shipment was to be given to Malabé Shipping Co., Inc. at its address in San Juan, the delivering carrier to steamer, as well as the forwarding agent being also Malabé Shipping Co., Inc. The short-form bill of lading was annexed as Exhibit A to Sea-Land Service, Inc.'s motion for summary judgment. It also appears undisputed that pursuant to the above mentioned contract of carriage Malabé Shipping Co., Inc. transported household goods belonging to the plaintiff pursuant to Malabé's shipping reference 63–26664–65, along with household goods belonging to different persons, pursuant to the shipping reference contained in the above mentioned bill of lading. Upon entering into said contract, Malabé Shipping Co., Inc. declared an approximate gross weight in pounds of 16,000 pounds, but instead of paying ocean freight charges on the basis of certain number of cents per pound, it exercised the option of transporting the whole trailerload pursuant to a flat rate tariff of $717.00, not including pick up charges, pursuant to Sea-Land Service, Inc.'s outward freight tariff #2, fourth revised page 68, in effect at the time of the occurrence of the facts complained of herein. Copy of said tariff was annexed as Exhibit B to Sea-Land's motion for summary judgment. The receipt, custody, carriage and delivery of the goods allegedly damaged in relation to this complaint was made pursuant to the terms and conditions of Sea-Land's short-form bill of lading which incorporated the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq., and the company's long-form bill of lading on file with the Federal Maritime Commission which incorporates said law to the whole period in which the goods are under the custody of the carrier.

■ Since the above mentioned trailer was transported pursuant to a flat rate of dollars per trailer of ocean freight, covering said trailer as a package, on a flat basis, and no value was declared by the shipper, and the ocean freight was solely computed with reference to the trailer as a single unit, then the trailer constituted a package upon which the $500 limitation per package, contained in Section 1304(5) of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1304(5), applies pursuant to the said statute and the case law. For that reason, as more fully appears explained in this Memorandum Order, Sea-Land Service, Inc.'s motion for summary judgment requesting that its responsibility be limited to $500.00 per package in this case ought to be granted.

The Court hereby states that the plaintiff against whom said motion for summary judgment was directed failed to file a motion in opposition and counter

affidavits. As to the other defendants, it will suffice to say that they orally opposed the motion for summary judgment at the hearing for oral argument and that only Malabé Shipping Co., Inc. filed a memorandum of law as requested by the Court. No issue of fact exists among the co-defendants since there is no affirmative pleading among them by cross-claim or otherwise.

## I.

■ Although the law applicable *ex proprio vigore* to coastwise traffic, that is, maritime traffic between ports in the United States and Puerto Rico, is the Harter Act of 1893, 46 U.S.C.A. § 190 et seq., by virtue of Section 1312 of the Carriage of Goods by Sea Act, 46 U.S. C.A. § 1312, said Carriage of Goods by Sea Act can be incorporated in a contract of coastwise carriage to be the law governing the contractual relationship between the parties to a maritime contract of transportation of such nature. Rhode Island Insurance Co. v. Pope & Talbott Line, 78 D.P.R. 454 (1956); The Globe Solvents v. The California, 167 F.2d 859 (3rd Cir. 1948); Waterman SS. Corp. v. The United States Smelting Co., 155 F.2d 687, cert. den. 329 U.S. 761, 67 S.Ct. 115, 91 L.Ed. 656 (1946); Van Camp Sea Food Co. v. Pacific Atlantic SS. Co., 122 F.Supp. 163 (D.C.Pa.1954); Burdines v. Pan Atlantic SS. Corp., 199 F.2d 571 (5th Cir. 1952); Fireman's Insurance Company of Newark, New Jersey v. Gulf Puerto Rico Lines, 349 F.Supp. 952 (D.C.P.R.1972, Memorandum Order of September 11, 1972.)

Said incorporation of COGSA in domestic or coastwise traffic is made by expressly incorporating said Act as a contractual disposition in the carrier's bill of lading. In our case Sea-Land's short-form bill of lading provides as follows, as evidenced by its motion for summary judgment, Exhibit A:

"This bill of lading is issued and the goods covered hereby are subject to, and all parties to the contract are bound by the terms, provisions, stipulations and conditions stated in the company's regular long form of bill of lading on file with the Federal Maritime Board, and posted on board each vessel and open for shipper's inspection at the company's offices, and with which the shipper hereunder is understood to be familiar, which terms, provisions, stipulations and conditions of said long form of bill of lading are hereby incorporated by reference in this short form bill of lading with the same force and effect for all purposes as if the same were severally, fully and specifically set forth herein.

"This short bill of lading is authorized by public law 85–810, 72 Stat. 977, approved August '28, 1958.

"This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936."

■ The fact that this incorporation was made on a short form bill of lading and that the long form bill of lading was not used in this case does not preclude the carrier from the benefits of the Carriage of Goods by Sea Act. It will suffice to cite Zifferer v. Atlantic Lines Ltd., 278 F.Supp. 736 (D.C.P.R. 1968), which holds that the use of a short form bill of lading is valid according to law, specifically the Shipping Act of the United States. See also Empacadora Puertorriqueña de Carnes, Inc. v. Alterman Transportation Line and South Atlantic and Caribbean Line, Inc., 303 F.Supp. 474 (D.C.P.R.1969).

A superficial examination of the short form bill of lading used in this case, as well as of Section 1312 of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1312, will show that said Act is applicable to domestic or coastwise commerce if the carrier so desires. All it has to do is incorporate the same in the contract of carriage. Once this is done, as it happened in the present case, the contract of carriage is subject to said Carriage of Goods by Sea Act as fully as in foreign commerce. Sea-Land Service, Inc., as

practically all the carriers do in today's shipping reality, made use of the option available in Section 1312 of the Act. Said incorporation is a valid one.

## II.

Section 1304(5) of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1304(5), which applies to this case by incorporation as above stated, reads:

"(5) Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier."

Under this section the carrier shall not in any event become liable for damage in connection with the transportation of goods in an amount exceeding $500.00 per package, or, in the case of goods not shipped in packages, per customary foreign unit, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. Said section 1304(5) has been held applicable to a trailer and said trailer has been defined as a package pursuant to the terms and conditions of said section of COGSA. In the case of United Purveyors, Inc. v. The M/V New Yorker, 250 F.Supp. 102 (S.D.Fla.1965), Judge Mehrthens from the U. S. District Court, Southern District of Florida, Miami Division, held at 250 F.Supp. 102 (1965) that a trailer could be considered a package for the purposes of the $500.00 limitation if certain facts were present in the case. In United Purveyors, supra, as it happens in the present case, maritime transportation occurred between ports in Puerto Rico and ports in the United States. Damages to the shipment were present. A bill of lading was issued incorporating the Carriage of Goods by Sea Act. No value was declared on the shipment and, most important of all, freight charges for the transportation in both cases covered the carriage of one trailer said to contain frozen fish and, in our case, household goods, and the cargo interest was charged for ocean freight on a flat basis and not on a certain amount of dollars and cents per pound pursuant to the tariff of the carrier. For those reasons the Court understood, and we agree, that the law allows such interpretation; that the trailer was a package within the $500.00 limitation contained in Section 1304(5) of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1304(5). In this respect Sea-Land's Exhibit B to its motion for summary judgment proves to be very interesting. The same constitutes the freight tariff providing for a flat rate basis of freight, which was a decisive factor in the decision of Judge Mehrthens in the United Purveyors case. Said Exhibit B is Sea-Land Service, Inc.'s outward freight tariff No. 2, Federal Maritime Commission Reference FMC #3, fourth revised page 68, which was in effect at the time of the occurrence of the facts complained of herein. The Court notices from said tariff in relation to the short form bill of lading accompanied with the motion for summary judgment as Exhibit A that household goods usually are transported at the rate of certain cents or dollars per 100 pounds or cubic feet, as the case may be. It also shows that household goods can be transported on a flat rate basis of $717.00 or $750.00, depending on the circumstances outlined in the tariff if the shipper so elects, instead of paying a higher amount of freight charges on a dollar or cent basis per 100 pounds or cubic feet, as the case may be. Said tariff states that shipments tendered to a carrier in a trailer which has been loaded by the shipper and locked, as it happens in the present case as evidenced by the bill of lading, will be charged on

the optional flat rate basis of $717.00 or $750.00 per trailer rate. For that reason the freight paid in this case is considered one which is most economical to the shipper and has no relation with the number of pounds carried of the commodity nor with its value. Of course, if the shipper elects to use the flat rate tariff, thus taking advantage of the minimum tariff per trailer load without declaring the value of the merchandise and without paying freight on the basis of a per pound or cubic feet unit, he runs into the inevitable consequence of having his trailer considered legally a package within the meaning of Section 1304(5) of the Carriage of Goods by Sea Act, and thus liable to be confronted with the $500.00 limitation per package in the case of damage. This limitation of $500.00 per package in relation to a trailer might sound *prima facie* unjust if we take into consideration the size of the trailer. But be it remembered that sizes, according to the case law, have nothing to do with the definition of package. Furthermore it should be taken into consideration that the shipper is not forced by any means to use a freight rate fee of $717.00 per trailer. See, for example, a $500.00 limitation per package case on a yacht carried on deck, Pannell v. United States Lines Company, 263 F.2d 497 (2nd Cir. 1959); Middle East Agency Inc. v. The John B. Waterman, 86 F.Supp. 487 (S.D.N.Y.1959) to the effect that large pieces of machinery which were shipped on skids, not cased or crated, were packages within the definition of Section 1304(5) of the Carriage of Goods by Sea Act. The Margaret Lykes, 57 F.Supp. 466 (E.D.La.1944), to the effect that a motortruck was a freight unit, within the meaning of the Carriage of Goods by Sea Act's $500.00 limitation per customary freight unit in the case of goods not shipped in packages; See Freedman & Slater, Inc. v. M/V Tofevo, 222 F.Supp. 964 (S.D.N.Y. 1963) to the effect that each automobile damaged during an ocean voyage and not the cubic measurement was the customary unit for the purpose of the $500.00

limitation; Caterpillar Americas Company v. SS. Sea Roads, 231 F.Supp. 647 (D.C.1964), affirmed 364 F.2d 829 (5th Cir. 1966), to the effect that an entire tractor and its accompanying parts, rather than hundred-weight freight units, was the customary freight unit pursuant to the $500.00 limitation; Aluminios Pozuelo Ltd. v. SS. Navigator, 407 F.2d 152 (2nd Cir. 1968), to the effect that a skidded toggle press was a package within the $500.00 limitation of COGSA.

■ It is all a matter of economic convenience for the parties involved in the contract of maritime transportation. On the one hand, we can have a case in which a person delivers cargo to the carrier to be loaded upon a van or trailer, the cargo is accompanied with a loading manifest, the nature of the goods are known to the carrier, freight is paid depending on the commodity carried and according to its value, and if damages occur, then the carrier will have to pay according to what he actually carried and, of course, taking into consideration the actual damages. On the other hand, we may have the case of a commercial freight forwarded like Malabé Shipping Company, Inc., which in a case like the one now before our consideration takes the risk of maritime transportation in its hands, brings to the shipping company's facilities a trailer loaded by them and locked pursuant to Note 6 of the tariff above mentioned, states in the bill of lading that the contents are household goods, elects a flat fee tariff per trailer of $717.00 because it is more economical to him and, of course, carries with its option the risks of whatever damages occur to the trailer or its contents, which cannot be imputed to the shipping company in an excess of $500.00, since the carrier did not load the cargo, was not aware of the nature and condition of the same, did not charge a tariff per pound or per value or cubic feet as per the applicable tariff, and only transported a package within the meaning of the law said to contain household goods.

With respect to the aforementioned, it will be seen that the facts, although sim-

ple, create legal problems, some of which are difficult to understand in view of the container or trailer revolution which has taken place in the last decades in American and European common carriage by water.[1] On the ocean we have seen that pursuant to Section 1304(5) of the Carriage of Goods by Sea Act, which is a statutory codification of the 1924 Convention for the unification of certain rules or laws relating to bills of lading, colloquially known as the Hague Rules, the limitation is that of $500 per package. Due to the container revolution that has taken place in the last decade, virtually all ocean conferences have limited their liability to $500.00 per container on the theory that the container is the package or unit within the meaning of the Carriage of Goods by Sea Act and the Hague Rules. See North Atlantic Continental Freight Conference Tariff No. 27, FMC–2, fourth revised page 34; Continental North Atlantic West Bound Freight Conference Tariff M, FMC–3, original page 16; Pacific Coast European Conference Freight Tariff No. FMC–14, fourth revised page 47; Outward Continental North Pacific Freight Conference Tariff FMC #30, original page 8.

A diplomatic conference was held in Brussels, Belgium, during May 15–27, 1967, to deal with various maritime conventions, including a proposed protocol for amendment to the Hague Rules. One of the proposals considered was an increase in the limitation of liability under the Hague Rules from $500.00 to $662.00 per package or unit. Norway and the United States introduced a counter-proposal to eliminate the per-package limitation and to substitute a limitation of $3.70 per pound. The purpose of the counter-proposal was to establish a limit that was high enough to cover most commodities (though not the most extraordinarily valuable merchandise) and, at the same time, to achieve the greatest potential for uniformity on at least two seg-

ments of the multisegment international shipment. It was thought that, if the ocean limit could be made the same as the truck limit in Europe, changes in the overseas rail convention and United States land liability provisions would be more readily obtainable, resulting, ultimately, in a single limitation of liability for through transportation in international trade.

Following the first Brussels meeting, vigorous industry opposition developed in the United States to the $3.70 per pound proposal. Ocean carriers generally advocated a limitation of $828.00 per package or 60¢ per pound, whichever was higher, while cargo insurance interests favored $662.00 per package or 90 cents per pound, whichever was higher. On the other hand, all interested agencies and departments of the United States agreed that the limitation advocated by both industry groups was inadequate if a containerload of general cargo was to be deemed a single package. The government regarded it as unfair that a number of packages which were combined into a container should be relegated to a 90 cents per pound limit, when, before containerization, these packages each would have been subject to a $500.00 limit. Various shipper groups agreed with the government position. It was finally agreed that the United States would not oppose a limitation of $662.00 per freight unit, or package or 90 cents per pound, provided that packages or units loaded in a container or on a pallet would be considered individually for the purpose of applying the limitation.

At the second meeting of the Twelfth Session of the Diplomatic Conference on Maritime Law held in Brussels during February 19–23, 1968, it was decided to adopt limitations of liability equivalent to $662.00 per package or unit or 90 cents per pound, whichever is higher, and to add a provision to accommodate the container or trailer problem. The container

1. For a general discussion of this problem, see Prospects and Problems of the Container Revolution, by Edward Schmeltzer and Robert A. Peavy, 1 Journal of Maritime Law and Commerce 203 (1970).

provision of the protocol passed by the Conference reads as follows:

"Where a container, pallet or similar article of transport is used to consolidate goods, the number of packages or units enumerated in the bill of lading as packed in such article of transport shall be deemed the number of packages or units for the purpose of this paragraph as far as these packages or units are concerned. Except as aforesaid, such article of transport shall be considered the package or unit."

Although the proposed container provision creates many problems of interpretation, the same is not the law in the United States since the 1968 protocol to the Hague Rules has not, as of this date, been submitted to the United States Senate for ratification, nor has the Department of State requested any congressional committee to amend the Carriage of Goods by Sea Act to bring it into conformity with the protocol. The difficulty presented in these $500-limitation cases is then that few, if any, in 1936, when the Carriage of Goods by Sea Act was adopted by Congress, could have foreseen the change in the optimum size of shipping units as has arisen as the result of technological advances in the transportation industry. The problems demand a solution better than the courts can afford, preferably on an international scale, and, as we have stated, diplomatic discussions have been initiated to that end. See Schmeltzer & Peavy, Prospects and Problems of the Container Revolution, cited herein. Meanwhile, the courts must wrestle with the statutory provision which has become ill-suited to present conditions and must rule on a case-by-case basis whether the $500.00 limitation applies or not to a given set of facts.

Although the plaintiff has failed to file opposition affidavits and memoranda in the defense of its position in this case, the Court states that it is fully aware of decisions apparently contrary to what has been proposed by co-defendant Sea-Land Service, Inc. In Leather's Best, Inc. v. The SS. Mormaclynx et al., 313 F. Supp. 1373 (E.D.N.Y.1970), judgment affirmed in part and reversed and remanded in part, at 451 F.2d 800 (2nd Cir. 1971), the Eastern District of New York and the United States Court of Appeals for the Second Circuit considered a $500.00 limitation case which has been the object of much comment in maritime legal circles. As to the $500.00 limitation issue the Court of Appeals held that the $500.00 statutory limitation of liability with respect to cargo which disappeared from the pier after unloading, applied to the 99 individual bales shipped in 40-foot-long sealed containers and not to the container as a unit. Of course, the facts in this case are markedly different from those in Leather's Best; hence a different result is required. In Leather's Best, contrary to the case at bar, the 99 bales of leather were carried by shippers identified as such, and placed in one container said to contain 99 bales. Also the freight rate was computed on a unit rate per 1,000 kilograms, less a discount for the use of shipper's container, and the 99 bales were loaded into the container under the supervision of a truckman engaged by defendant Moore McCormack's agent in Germany, who gave his receipt for 99 bales of leather, helped to close the door of the van and watched while the container was sealed. No flat rate tariff was used and the bill of lading described the contents of the container as 99 bales of leather with a gross weight of 10,864 kilos. As stated, the freight was computed on the basis of a fixed price per thousand kilograms, as specified in the tariff applicable to leather in bales or rolls. Under those circumstances, the Court understood that each bale and not the container was a package, but at page 1381 of the Opinion at the district court level, the Court distinguished the case of United Purveyors, Inc. v. The M/V New Yorker, 250 F. Supp. 102 (S.D.Fla.1965), which supports the defendant herein insofar as it held that the $500.00 limitation per package on a trailer was available since the findings recited that the transportation

,was charged at a flat basis for each trailer as a single unit.

In view of the above mentioned, and taking into consideration the decision of United Purveyors, Inc. v. The M/V New Yorker, 250 F.Supp. 102 (S.D.Fla.1965), the Court is of the opinion that co-defendant, Sea-Land Service, Inc., is entitled to summary judgment as a matter of law and that plaintiff's recovery in respect of said co-defendant in any event is limited to $500.00 per package, in this case the trailer unit, in accordance with the terms and conditions of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq., specifically Section 1304(5). It is so ordered.