**FEDERAL INSURANCE COMPANY, and Robert A. Clair Co., Inc., Plaintiffs,**

v.

**TRANSCONEX, INC., Defendant.**

**Civ. No. 74–1379.**

United States District Court, D. Puerto Rico.

May 12, 1976.

Paul E. Calvesbert and Jiménez & Fusté, San Juan, P.R., for plaintiffs.

Pieras & Esteves, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

TOLEDO, Chief Judge.

This cause came to be heard on defendant Transconex, Inc.'s Motion for Summary Judgment and Memorandum dated August 22, 1975, and plaintiffs' Counter-Motion for Summary Judgment and Amended Motion in Opposition to Defendant's Motion for Summary Judgment dated September 26, 1975.

The motions for summary judgment were each accompanied by an affidavit sworn to by an authorized official and after careful consideration of the statements contained therein, the motions and briefs, we deem that the facts of the case are not in dispute.

On or about November 29, 1973 and December 2, 1973, the defendant, ("Transconex"), a non-vessel operating common carrier by water ("NVOCC"), moved the shipments object of the present controversy, under three bills of lading from the port of Jacksonville, Florida to the port of destination, San Juan, Puerto Rico, there to be consolidated in one trailer for delivery to Stratford of Puerto Rico., Inc. at Ciales, Puerto Rico.

The bills of lading, copies of which were annexed to defendant's Motion for Summary Judgment reveal that bill of lading J42156 dated November 29, 1973, covering 262 cartons of piece goods, shipped by plaintiff, Robert A. Clair Co., Inc. and consigned to Stratford of Puerto Rico, Inc. at Ciales, Puerto Rico, described the movement of the goods in a container on Voyage 174 aboard the Barge Jacksonville. The second bill of lading was J42366 dated December 2, 1973, covering 45 cartons of rib cotton cloth by the same shipper for the same consignee in a trailer to be carried aboard the Barge Fortaleza on Voyage 180. The third shipment consisted of 150 rolls of knitted or synthetic cloth involving the same parties, shipped under bill of lading J42395 dated December 2, 1973, and carried in a trailer on Voyage 180 of the Barge Fortaleza.

The present action was filed alleging that the defendant stripped the trailers after they arrived at San Juan and consolidated the three shipments into another trailer and while in the possession of the defendant, the said trailer and contents were destroyed by fire. Federal Insurance Co.'s claim is in subrogation for payment to Robert A. Clair

Co., Inc. of $25,000 under an insurance policy. Robert A. Clair Co., Inc. claims the uninsured excess value of the shipment, $7,770.76, and the refund of $2,273.43 which it paid in freight. Transconex answered the complaint admitting the circumstances surrounding the shipments but denying it was negligent and the value of the shipments and further raising the defense that pursuant the terms of the three bills of lading and its tariff, it is only liable to pay the sum of $50.00 per bill of lading.

The parties conducted discovery and subsequently Transconex filed a Motion for Summary Judgment wherein it accompanies the bills of lading and recites the language on which its liability is allegedly limited to $50.00 per bill of lading. The defendant also admitted receiving the merchandise and that it was lost by fire. Transconex further states that there is no genuine issue as to any material fact and that summary judgment is proper. Defendant's Motion and Memorandum was sworn to by an officer of Transconex, Inc. who stated to have knowledge ". . . of all the facts and transactions dealing with the allegations made in the complaint . . ." including the facts surrounding the issuance and contents of the bills of lading and Transconex' tariff.

On the other hand, the plaintiffs opposed the summary judgment requested by the defendant and also moved for counter-summary judgment on the following grounds:

1) that there is no genuine issue as to any material fact except whether Transconex had a long-form bill of lading on file with the Federal Maritime Commission;

2) that as a matter of law and fact, the clause contained in the three bills of lading issued by Transconex limiting its liability to $50.00 per bill of lading movement, is illegal and contrary to law, specifically the Harter Act of the United States, Title 46, United States Code, Section 190, et seq., The Carriage of Goods by Sea Act ("COGSA"), Title 46, United States Code, Section 1300, et seq., The United States Shipping Act, Title 46, United States Code, Section 801, et seq., Section 2 of the United States Intercoastal Shipping Act of 1933, Title 46, United States Code, Section 844, and the Rules and Regulations of the Federal Maritime Commission, Title 46 C.F.R. 500, et seq.

3) that Transconex has not filed as required by Section 2 of the Intercoastal Shipping Act of 1933, Title 46, United States Code, Section 844, the regular long-form bill of lading containing the terms and conditions of the transportation agreement.

4) that since the regular long-form bill of lading has not been filed as required by Section 2 of the Intercoastal Shipping Act of 1933, supra, the three short-form bills of lading issued by the defendant are null and void; and

5) that since the three short-form bills of lading are null and void, the defendant failed to issue a valid bill of lading and its liability towards the plaintiffs is in the nature of an insurer and hence, absolute.

To the contrary, the defendant in its briefs opposes the summary judgment requested by the plaintiff on the following grounds:

1) That the Harter Act, supra, and cases decided thereunder, and not COGSA, supra, governs the shipment and permits the carrier to limit its liability to a stated sum.

2) That the $50.00 per bill of lading limitation of liability is valid since the carrier offers alternatives in the form of an option to declare the true value of the goods and pay a higher freight rate or to provide all risk insurance at a cost of $.65 per $100.00 valuation.[1]

3) That the Intercoastal Shipping Act of 1933 does not require that a long-form bill of lading be filed; and

4) That Transconex has fully met the legislative purposes of the Intercoastal Shipping Act of 1933, since its short-form bill of lading states it is subject to the terms and conditions of the Tariff.

Both parties have filed briefs in support of their respective contentions which we

---

1. Transconex Tariff FMC–F No. 1, page 16–D.

will discuss at length since the issues raised are novel to this jurisdiction.

## THE LIMITATION CLAUSE

█ The loss in this case arises from three separate shipments under three bills of lading issued for ocean carriage from Jacksonville, Florida to San Juan, Puerto Rico. The law applicable *ex proprio vigore* to coastwise traffic, which includes maritime traffic between ports in the United States and Puerto Rico, is the Harter Act of 1893, Title 46, United States Code, Section 190, et seq., *Fireman's Insurance Co. of Newark, N.J. v. Gulf Puerto Rico Lines,* 349 F.Supp. 952, 954 (D.C.P.R.1972); *Empacadora Puertorriqueña de Carnes v. Alterman Transport Line, et al.,* 303 F.Supp. 474 (D.C. P.R.1969). Since neither the short-form bills of lading nor the defendant's tariff incorporates COGSA into the contract of carriage as is permissible by virtue of Section 13 of said Act, we must understand that the carriage is governed by the Harter Act. Therefore, we are not compelled to examine the validity of the limitation clause under the provisions of Section 4(5) of COGSA, Title 46, United States Code, Section 1304(5) which controls the $500-per-package or customary freight unit limitation. We must however, analyze the limitation within the context of the Harter Act and the case law.

In our case, Transconex' short-form bill of lading provides as follows as evidenced by its Motion for Summary Judgment and Memorandum, Exhibits 1A, B and C:

"NOTE: This Company will not pay over $50.00 in case of any loss or damage, unless a greater value is declared and charges for such greater value paid, subject to conditions set forth in published Tariff and long-form bill of lading. Shipper and consignee accept limitations of liability as set forth in Transconex, Inc.'s published Tariff. Carrier shall be entitled to carry goods on deck in containers or in trailers."

The provision contained in the tariff referred to above is as follows:

"In consideration of the rate charged for carriage, being dependent on the value of the goods and being based upon an agreed valuation of not more than $50.00 per shipment, unless a greater value is declared at time of shipment and an additional charge therefore paid, the shipper or owner of the goods agrees that Transconex, Inc. shall not be liable in any event for more than the value so declared for more than $50.00 or more than the actual value if same is less than $50.00. Neither any oral declaration nor statement of value for governmental or Customs purposes, nor the presentation of invoices for use in foreign customs, collection of C.O.D. amounts or other purposes, nor the declaration of value for insurance, nor instructions to Transconex, Inc. to insure shall be deemed a declaration of value, nor shall such offerings supplement or amend or alter in any way the liability of Transconex, Inc. for the agreed value at time of shipment and on which the charge for transportation is based." [2]

█ Before embarking on an analysis of the pertinent statutes and uniform general maritime law which disposes of this case, the status of the defendant as a carrier must be established. Transconex acts as a non-vessel operating common carrier by water (NVOCC) and as such, filed a tariff schedule with a regulatory agency, the Federal Maritime Commission. In general, an NVOCC assembles less-than-trailer load (LTL) shipments into a single container for delivery to an ocean carrier. The NVOCC at the port of destination then removes and sometimes consolidates again the shipments for distribution to the consignees. Here, as is the practice, the defendant issued the bills of lading and therefore, is the carrier responsible for the transportation throughout the movement. For this service, the NVOCC and not the ocean carriers employed by it is responsible to the shipper for the through shipment. *Fireman's Fund American Insurance Companies v. Puerto*

2. Transconex, Inc. Tariff FMC–F No. 1, Rule 60(a).

*Rico Forwarding Co., Inc.,* 492 F.2d 1294 (1 Cir. 1974); *Bernhard Ulmann Co., Inc. v. Porto Rican Express Co.,* 3 F.M.B. 771 (1952), 1952 AMC 447; *Common Carriers by Water-Status of Express Companies, etc.,* 6 F.M.B. 245 (1961). By this rule then, Transconex is responsible to the shipper or shippers subrogee for the through transportation of the goods.

■ We must note at the outset of our discussion that the Harter Act is void of specific language governing the extent to which a carrier may limit its liability such as that set forth in the COGSA $500-per-package limitation. Notwithstanding the absence of black letter law, we are not unmindful of the intent of Congress in passing the Harter Act and COGSA to counteract the persistent efforts of carriers, who are the drafters of ocean bills of lading, to insert all embracing exceptions to liability. *Tessler Brothers (B.C.) Ltd. v. Italpacific Line,* 494 F.2d 438, 444 (9 Cir. 1974).

■ Stipulations on a bill of lading designed to limit the amount of the carrier's liability are generally known as agreed-valuation clauses or true limitation agreements. The clause generally recites that each package or item is agreed by the parties to have a certain value and that unless a greater value is declared and a higher freight rate is paid, the carrier was not liable for loss or damage greater than the agreed value. Plaintiffs contend that the limitation clause is not a valid limitation clause since it is too broad and covers the whole shipment or bill of lading. We agree. The following cases cited by both parties lead us to this conclusion: *Frederick Leyland & Co. v. Hornblower,* 256 F. 289 (1 Cir. 1919); *Reid v. Fargo,* 241 U.S. 544, 36 S.Ct. 712, 60 L.Ed. 1156 (1916); *The Ansaldo San Giorgio I,* 3 F.Supp. 579 (D.C.1933); *San Giorgio I v. Rheinstrom Co.,* 294 U.S. 494, 55 S.Ct. 483, 79 L.Ed. 1016 (1934); *Hohl v. Norddeutscher Lloyd,* 175 F. 544 (2 Cir. 1910); *Hart v. Penn. R.R.,* 112 U.S. 331, 5 S.Ct. 151, 28 L.Ed. 717 (1884); *Kuhnhold v.*

*Compagnie Generale Transatlantique,* 251 F. 387 (2 Cir. 1918); *The Koan Maru,* 251 F. 384 (2 Cir. 1917); and *Calderon v. Atlas S.S. Co., Ltd.,* 170 U.S. 272, 18 S.Ct. 588, 42 L.Ed. 1033 (1898).

We have examined the limitation clauses and in each case the stipulated sum covers a package or freight unit. In not one instance does the limitation refer to a shipment or bill of lading. The reasoning determinative of the clause's validity is whether it is reasonable and not proscribed by public policy in addition to the availability of an alternate or *ad valorem* freight rate. *San Giorgio I v. Rheinstrom Co., supra; Hart v. Penn. R.R. Co., supra.* Following these guides it is not difficult to find that the instant clause is an unreasonable and unfair limitation more unto an absolute disclaimer of liability. The valuation represents so small an amount it is a mere token and public policy cannot sanction it. *David Crystal, Inc. v. Cunard S.S. Co.,* 339 F.2d 295, 299 (2 Cir. 1964). The disparity is too great to be lightly overlooked and the limit is so low as to be entirely illusory when contrasted even with the $500-per-package limitation of COGSA as interpreted by this Court to cover one trailer unit. *Lucchese v. Malabe Shipping Co., Inc.,* 351 F.Supp. 588 (D.C.P.R.1972).

■ Another reason particular to this case which inclines invalidating the limitation clause is defendant's own tariff in which it appears that defendant has failed to publish an alternate higher freight rate although Transconex throughout the tariff repeatedly alludes to the existence of such a rate.[3] Absent the publication and filing of a tariff containing the alternate higher freight rate, the carrier may not charge for such a higher rate. See Section 18 of the Shipping Act, Title 46, United States Code, Section 817; *Gilbert Imported Hardwoods, Inc. v. 245 Packages of Guatambu Squares,* 508 F.2d 1116 (5 Cir. 1975). The Court does note however, that the Transconex Tariff at Rule 160 offers insurance under "open"

---

**3.** Reference to an alternate higher freight rate is made in the limitation clause on the bill of lading and in Rule 60(a) of the Tariff. The

nonexistent higher freight rate is also referred to at Rule 15(h), 2d, Revised Page 7, Transconex Tariff.

policies covering various risks including all risk insurance and marine F.P.A. (Free From Particular Average) insurance which usually covers losses not claimable against the vessel. Defendant's contention seems to be that these insurance coverages are the alternate freight rate which plaintiff shipper may have availed himself to escape the limitation; surely the shipper could have purchased the insurance for coverage in the event an occurrence where the carrier exempts himself from liability altogether. We hold that in the absence of a valid specific alternate higher freight rate or *ad valorem* rate, notwithstanding the carrier's offer to place insurance, the limitation clause is without any effect and does not bind the carrier and the shipper, even though the carrier may have offered the rate on its bill of lading or on its tariff.

■ Where no choice for special or alternative rates is made available to the shipper, then the limitation is a clause inserted in the bill of lading in violation of Section 1 of the Harter Act, *supra.*[4] See also *Transmarine Corporation v. Charles H. Levitt & Co.,* 25 F.2d 275, 279 (2 Cir. 1928); *A.C. Lawrence L. Co. v. Compagnie Generale Transatlantique,* 18 F.2d 930 (2 Cir. 1927); *Toyo Kisen Kabushiki Kaisha v. Willits & Co.,* 17 F.2d 762, 764 (9 Cir. 1927); *Knott v. Botany Worsted Mills,* 179 U.S. 69, 72, 21 S.Ct. 30, 31, 45 L.Ed. 90 (1900).

## FILING REQUIREMENT FOR THE LONG–FORM BILL OF LADING

■ As stated at the beginning of this opinion, the plaintiffs allege that Transconex failed to file in the Tariff the regular long-form bill of lading as required by Section 2 of the Intercoastal Shipping Act of 1933, *supra,* while on the other hand the defendant contends that the legislative in-

tent of the statute is met in that the Tariff sets forth all of the terms and conditions evidencing the transportation agreement. The first thing to be determined is whether the statute is applicable to Puerto Rico, although the defendant concedes that it does. Neither the statute or any case we know indicates that the Shipping Statutes (Shipping Act of 1916, supra, and the Intercoastal Shipping Act of 1933, supra) or the Rules and Regulations of the Federal Maritime Commission are inapplicable to Puerto Rico, while numerous cases involving carriers in the Puerto Rico offshore trade recognize the same are applicable to Puerto Rico. See among others, *Fireman's Fund American Insurance Companies v. Puerto Rico Forwarding Co., Inc., supra; Commonwealth of Puerto Rico v. Federal Maritime Commission,* 152 U.S.App.D.C. 28, 468 F.2d 872 (1972); *City of Nome v. Alaska S.S. Co.,* 321 F.Supp. 1063, 1065 at note 5 (D.C.Alaska 1971); *Commonwealth of Puerto Rico v. Sea Land Service, Inc.,* 349 F.Supp. 964, 971 (D.C.P.R.1970); *Zifferer v. Atlantic Lines, Ltd.,* 278 F.Supp. 736 (D.C.P.R.1968); *Commonwealth of Puerto Rico v. Federal Maritime Board,* 110 U.S.App.D.C. 17, 288 F.2d 419 (1961) at note 1.

In this case and as is permitted by Section 2 of the *Intercoastal Shipping Act of 1933, supra,* the carrier issued three short-form bills of lading rather than a lengthy long-form document. The short-form bill states in the "Note" transcribed *in toto* hereinbefore, that it is subject to conditions set forth in the published Tariff and long-form bill of lading. We have thoroughly examined the Official File Copy of Transconex, Inc. Tariff FMC–F No. 1, effective during the period of November 29, 1973 through December 2, 1973, the inclusive dates when the short-form bills were issued, being quite evident that the long-form bill

---

4. The Harter Act at Section 1, 46 U.S.C. § 190, provides:

"It shall not be lawful for the manager, agent, master or owner of any vessel transporting merchandise or property from or between ports of the United States and foreign ports to insert in any bill of lading or shipping document any clause, covenant, or agreement whereby it, he or they shall be relieved from liability for loss or damage arising from negligence, fault, or failure in proper loading, stowage, custody, care, or proper delivery, of any and all lawful merchandise or property committed to its or their charge. Any and all words or clauses of such import inserted in bills of lading or shipping receipts shall be null and void and of no effect."

of lading was not on file. The Court has no way of knowing what such a long-form contains or even if one exists. This Court has previously construed the statutory authority conferring on a carrier the right to issue short-form bills by saying:

> "The defendant's right to issue a short-form of bill of lading to cover the goods in lieu of a regular long-form of bill of lading is unquestionable. Section 2 and Section 5 of the *Intercoastal Shipping Act* (46 U.S.C.A. §§ 844 and 845b) permits the carrier to issue the short-form and to keep the regular long form of bill of lading in blank form posted aboard the vessel, on file in the Federal Maritime Board and available to shippers in its shipping offices." *Zifferer v. Atlantic Lines, Ltd.,* 278 F.Supp. 736, 739 (D.C.P. R.1968).

 The Court is also aware that it is the well settled practice among ocean carriers to file in the tariff the regular long-form bill of lading. Another case on this subject of incorporation by reference is *City of Nome v. Alaska Steam-Ship Company, supra,* where the Court stated:

> "The purpose of the 1958 amendment to 46 U.S.C.A. § 844 was to simplify billing procedures for carriers in the non-contiguous trade by permitting them to issue a short-form bill of lading incorporating the provisions of a standard form on file with the Commission. 3 U.S.Code Cong. & Admin.News, p. 4091 (1958). Initially, the filing was to be permissive, but the wording was changed at the suggestion of the Secretary of Commerce to simplify administration. 3 U.S.Code Cong. & Admin.News p. 4093 (1958).
>
> It was assumed by Congress that accepted billing procedures in 1958 required the issuance of a long-form of lading in order to consummate an effective contract of carriage. 3 U.S.Code Cong. & Admin. News pp. 4091–92 (1958). The short-form bill was designed to provide 'legal protection equal to that obtainable under the present (prior to 1958) system.' 3 U.S. Code Cong. & Admin.News p. 4092 (1958). In order to preserve the notice provided

by the long-form bill of lading Congress provided that the short-form had to actually be issued and that the long-form had to be available upon request and conspicuously posted on each vessel. Even with these safeguards Congress, at the suggestion of the Secretary of Commerce, changed the language of the amendment so that actual issuance of the short-form is not 'conclusive' proof of notice, but is merely 'deemed' to give notice of the standard bill."

This Court decides that when an effective contract of carriage between the parties was not consummated, that is, where the standard long-form bill of lading was not filed or published in the tariff, the plaintiffs are not bound by the exemption appearing on the short-forms issued by the defendant carrier.

## CARRIER'S LIABILITY

 No dispute has been raised by the defendant as to whether the merchandise was received for transportation, or that the value is different than what is claimed in the Complaint, or even whether the merchandise was lost by fire. There remains then the question of defendant's ultimate liability. Essentially, the controversy is circumscribed to whether the defendant is liable for the amount claimed in the complaint or the lesser amount by virtue of the exemption clause. The Court concludes that the defendant is liable for the total value. Needless to say, if a dispute surrounding the measure of damage or loss had arisen then the Court would have had to determine the amount recoverable according to general Maritime Law principles. *Santiago v. Sea Land Service, Inc.,* 366 F.Supp. 1309 (D.C.P.R.1973).

Pre-Harter Act cases have classified the carrier's duty to keep and transport the goods safely as being in the nature of an insurer. *The Delaware v. Oregon Iron Co.,* 81 U.S. (14 Wall.) 579, 20 L.Ed. 779 (1872); *Propeller Niagara v. Cordes,* 62 U.S. (21 How.) 7, 23, 26, 16 L.Ed. 41, 46, 47 (1858); *New Jersey Steam Nav. Co. v. The Merchant's Bank,* 47 U.S. (6 How.) 344, 381, 12 L.Ed. 465, 482 (1848). The duty has also

been focused within the common law concept of bailment where certain clauses are found null and void. *David Crystal, Inc. v. Cunard S.S. Co., supra.* The Court bears in mind having stricken the limitation clause as well as the bill of lading contract for reasons previously mentioned, that the defendant carrier only sought to bring the loss within the scope of the $50.00 limitation and did not rely on any statutory exceptions to which it was otherwise entitled under Section 3 of the Harter Act, *supra,* and neither has the defendant alleged that the loss was caused or contributed in part by the plaintiff shipper. Therefore, Transconex as a common carrier is absolutely responsible for the safe delivery of the merchandise either as an insurer or as a bailee.

## CONCLUSION

From an examination of the documents and pleadings on file as well as the Motion for Summary Judgment filed by the defendant in light of the Counter-Motion requesting the same remedy filed by the plaintiffs, we can plainly see that the defendant relies strictly on the limitation clause. Plaintiffs likewise contend that the issues are of law and not of fact. That explains why both parties have moved for summary judgment.

In view of the foregoing and in light of the discussion contained herein, it is

ORDERED, ADJUDGED and DECREED, that defendant's Motion for Summary Judgment be and is hereby denied and plaintiffs' Counter-Motion be and is hereby granted. The Clerk of the Court is ordered to enter judgment for the plaintiffs as aforementioned in the amount prayed for in the complaint.

IT IS SO ORDERED.