**ANTILLES INSURANCE COMPANY, Plaintiff,**

v.

**TRANSCONEX, INC., Defendant.**

**Civ. No. 86–1819 (JAF).**

United States District Court, D. Puerto Rico.

Oct. 26, 1987.

José A. Fuentes–Agostini, Troncoso & Fuentes-Agostini, San Juan, P.R., for plaintiff.

---

**4.** It should be noted that Insid has not objected to the sale of its real estate property.

Fernando Castro, Trias, Doval, Muñoz, Acevedo & Otero, San Juan, P.R., for defendant.

## OPINION AND ORDER

FUSTE, District Judge.

This case is submitted for decision on the basis of a factual stipulation and accompanying memoranda of law. The facts, largely uncontested, are as follows.

On or about November 21, 1985, Transconex, in its capacity as a non-vessel operating common carrier (NVOCC) undertook to transport 126 cartons of shoes from the Ambassador Division of Florsheim in Chicago ("Ambassador") to La Favorita, a retailer in Puerto Rico. One hundred and eight cartons were delivered in good order and condition on November 27, 1985, but the remaining eighteen cartons were delivered ten days later, with most of the contents wet and destroyed. The merchandise was damaged while Transconex stored the cartons in a warehouse in Puerto Rico prior to delivering them to the retailer consignee. Plaintiff in this action insured La Favorita and filed this complaint in subrogation after reimbursing the consignee for the lost merchandise.

Defendant Transconex does not dispute that the shoes were damaged or destroyed before delivery nor is the amount of the damage contested. The only issue is whether Transconex can limit its liability to $50 per shipment as indicated in the bill of lading subscribed to by Ambassador, or whether the plaintiff can recover the full value of the merchandise, $1,320, plus expenses of $200. We hold that Transconex is liable for the entire amount.

■ We begin by noting that the law governing this transaction *ex proprio vigore* is the Harter Act, 46 U.S.C. 190. However, the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. 1300–1312, regulates the contract of carriage, inasmuch as its terms are incorporated routinely to domestic or coastwise traffic. The contract between Transconex and the shipper of the shoes reads, in pertinent part:

> This Bill of Lading is issued and the goods covered hereby are subject to all the terms, provisions, stipulations and conditions stated in Carrier's tariffs or classifications on file with the Interstate Commerce Commission or the Federal Maritime Commission.

We take judicial notice of the fact that all maritime carriers serving Puerto Rico, including non-vessel operating common carriers, have incorporated COGSA by reference for all periods before loading, after discharge, and while the goods are in the care and custody of the carrier. Fed.R. Evid. 201(b). *See* 46 U.S.C. 1307 and 1312; *Rhode Island Insurance Co. v. Pope & Talbott Line, Inc.*, 78 D.P.R. 454 (1955); *Commonwealth of Puerto Rico v. Sea-Land Service Inc.*, 349 F.Supp. 964 (D.P.R. 1972); *Fireman's Insurance Co. of Newark v. Gulf, Puerto Rico Lines*, 349 F.Supp. 952 (D.P.R.1972).

■ Both the Harter Act and COGSA, as interpreted by courts, forbid carriers such as Transconex from limiting their liability to offensively small amounts. Such attempts have been found to be "unreasonable and unfair ... more unto an absolute disclaimer of liability." *Federal Ins. Co. v. Transconex, Inc.*, 430 F.Supp. 290, 295 (D.P.R.1976); *David Crystal, Inc. v. Cunard Steam–Ship Co.*, 339 F.2d 295, 299 (2nd Cir.1964). Specifically, a $50 per shipment limitation has been found to be "so low as to be entirely illusory." *Federal Ins. Co.*, 430 F.Supp. at 295; *Hanover Ins. Co. v. Shulman Tans. Enterprises, Inc.*, 581 F.2d 268, 274 (1st Cir.1978). To allow Transconex to limit its liability to $50 per shipment would contravene well-established maritime policy against the lessening of the liability of carriers. 46 U.S.C. sec. 190; 46 U.S.C. sec. 1303(8).[1]

---

1. Moreover, section 4(5) of COGSA, 46 U.S.C. sec. 1304(5), subjects vessel operating carriers to a $500 *minimum* per *package* provision, which, were Transconex such a carrier, would exponentially increase its liability. It appears inescapably illogical to enable non-vessel operating common carriers such as Transconex to limit their liability to only $50, when, were they assuming all of the risks of transporting the goods by sea, they would be subject to the $500 mini-

Transconex argues that because the shipper was given the option of (1) full carrier liability in exchange for declaring excess valuation at a 1% higher rate, (2) alternate liability insurance, either by the carrier for an additional rate, or through the shipper's own insurer, or (3) lower released value rates in consideration of the carrier's limited liability of $50 per shipment, and in this instance opted to declare nothing at the higher rates, Transconex should only be required to pay damages at the limited rate of $50 per shipment.

We see no difference between this attempt by Transconex to limit its liability by offering three options and an earlier attempt to offer only two—the increased rate or the $50 limitation—which was documented and discredited in *Hanover.* Under the latter scheme, a shipper is given one more opportunity to spend money to insure himself when in fact the law does not exempt the carrier from liability in the first place.

 Moreover, although Transconex argues that the Interstate Commerce Commission, through the Federal Maritime Commission, approved[2] of the three choices in the tariff offered by Transconex, we note, as this circuit has previously, that "[t]he FMC has no power to approve a regulation of a carrier which is contrary to the statutory agreements mandated by Congress in COGSA and the public policy against a carrier exempting itself from liability." *Hanover,* 581 F.2d at 274. Given the overwhelming public policy considerations embodied in federal maritime law counseling against such an opportunity to limit liability, we are unable to ratify Transconex' rate policy tariff as filed with the FMC.

Accordingly, judgement will be entered in favor of plaintiff Antilles Insurance

Company in the amount of $1,520.00, with costs. No fees.

IT IS SO ORDERED.

---

mum. We, like other courts, are unwilling to apply such reasoning. *David Crystal, Inc.,* 339 F.2d at 299; *Federal Ins. Co.,* 430 F.Supp. at 295.

**2.** In the real world, tariffs are simply filed with the administrative bodies. They stand as filed, not as approved. If a dispute arises and the tariff is invoked, the tariff will usually stand as part of bill-of-lading incorporation if found reasonable and legal by courts. *See Gilbert Imported Hardwoods, Inc. v. 245 Packages of Guatam-*

*bu Squares, etc.,* 508 F.2d 1116 (5th Cir.1975); *Norfolk & W.R. Ry. Co. v. B.I. Holser, Inc.,* 466 F.Supp. 885 (N.D.Ind.1979); *Florencio Roman v. Puerto Rico Maritime Shipping Auth.,* 454 F.Supp. 521 (D.P.R.1978); *Firestone Tire & Rubber v. Almacenes Miramar, Inc.,* 452 F.Supp. 670 (D.P.R.1978), *aff'd.,* 588 F.2d 817 (1st Cir.1978); *Squillante & Zimmerman v. P.R. Marine Management, Inc.,* 516 F.Supp. 1049 (D.P.R. 1981).